Argued October 11; reversed November 26, 1935

# LOPP *v.* FIRST NATIONAL BANK OF PORTLAND
## (51 P. (2d) 261)

*Paul R. Harris,* of Portland (Davis & Harris, C. W. Robison, and Charles J. Stocklen, all of Portland, on the brief), for appellant.

*Lamar Tooze,* of Portland (Cake & Cake and Jaureguy & Tooze, all of Portland, on the brief), for respondent.

CAMPBELL, C. J. This is an action to recover damages for personal injuries claimed to have been sustained through the negligent acts of defendant.

Plaintiff alleges in effect, that defendant is a banking corporation doing business in a certain building in Portland, Oregon. This allegation is admitted by defendant. The gist of plaintiff's complaint is that on March 28, 1934, she went into the defendant bank to transact some business and while walking across the floor she slipped and fell, sustaining some injury; that the injury was caused by the negligence of defendant in the following particulars:

"(a) That defendant maintained said lobby in a dangerous and slippery condition by allowing quantities of water and a muddy pasty substance to accumulate thereon, which resulted in said floor being in a hazardous, slick and slippery condition;

(b) That defendant carelessly and negligently failed to warn persons, and in particular the plaintiff, in making use of said lobby, of the unusual, hazardous and slippery condition thereof;

(d) That said defendant, at said time and place, carelessly and negligently failed to remove the water from said floor by mopping or by any other means,

and as a result allowed the same to remain in a hazardous, slick and slippery condition;

(e) That defendant carelessly and negligently failed and neglected to cover said floor with some form of matting to prevent the same from becoming slick and slippery during the rainy season of the year.''

She further alleges the extent of her injuries and her damages.

Defendant filed an answer which amounted to a general denial of negligence on its part, but admitted that plaintiff was upon the premises the day in question, and that she fell sustaining some minor injuries. Then, for an affirmative defense, alleged in effect: That whatever injuries plaintiff sustained by her fall in the lobby of the bank were caused by reason of her own negligent acts in the following particulars:

''(a) That at the time of and immediately prior to said fall the plaintiff was negligently, carelessly and recklessly walking over said lobby in a rapid and hurried manner;

(b) That at the time of and immediately prior to said fall the plaintiff negligently, carelessly and recklessly was walking over said lobby without paying proper or any attention at all to how or where she was placing her feet;

(c) That at the time of and immediately prior to said fall the plaintiff was negligently, carelessly and recklessly walking over said lobby without keeping a proper or any lookout at all for the purpose of observing the character and condition of the floor of said lobby.''

The new matter in the answer was denied. The cause was tried to a jury. At the close of plaintiff's case in chief, defendant moved for an involuntary nonsuit against plaintiff which was granted by the court. Plaintiff appeals.

The questions presented by the appeal are: Did the plaintiff produce any competent evidence tending to show that the injury she sustained was caused by one or more of the alleged acts of negligence on the part of defendant? Does the testimony that she produced show that she was guilty of contributory negligence or of any of the negligent acts alleged in the answer?

The evidence tends to show that plaintiff, a woman of 37 years of age, and an artist by profession, went into the bank on the day of the accident for the purpose of transacting business. She had been a customer [or I believe they now are called clients] of the bank for several years and was familiar with the interior arrangement and floor of the lobby. The entrance to the building was through a swinging door at the street. Then through a hall or vestibule within the building for about a distance of eight feet; then up a flight of stairs of seven steps, a distance of about six feet, then on the same level as the lobby for a distance of six feet and through another swinging door into the lobby. The floor of the vestibule and the steps of the stairs were covered with a perforated rubber matting. She testified that she walked a few steps beyond the door into the lobby when she slipped and fell. This would make a distance of about 24 feet longitudinally, from the street entrance to the place where she fell. The record does not disclose the difference in elevation between the vestibule floor and the lobby floor.

The plaintiff's testimony further shows that on the day of the accident there was a heavy downpour of rain which had subsided "some little time before" she entered the building, and that at the time of her entrance there was what she called a "drizzle". She entered the building about 3 o'clock in the afternoon. As she entered the bank lobby, she "glanced at the

floor and then glanced up to find a desk''. There were other people in the lobby going to and fro. ''There was one man in particular that I was passing and I angled a little bit to the right, and just about that time I slipped on something slippery and my feet went completely from under me and I fell with my weight on my right arm and right hip. I put my arm back to keep myself from falling flat.'' Her feet went out in front of her. She looked at her hand before getting up and ''I noticed that there was a pasty, muddy water all over my hands and my stockings were wet and the dress from the hem of the skirt to the hip was wet.'' The manager of the bank assisted her to get up, saying to her at the time: ''I am sorry, you have taken an awful fall. I told them to clean that up and they haven't done it.''

She further testified that there were large quantities of the pasty substance on the floor, and it was ''a muddy paste, a slimy muddy paste''.

She was asked on cross-examination: ''Q. When you looked down at the floor, did you notice that dirty water on the floor?'' She answered: ''No, I didn't.''

The brief of appellant, as well as that of respondent, cites many cases regarding the duty of the owner or occupier of a business building in relation to the patrons, customers or clients of such business who have occasion to enter the building in the transaction of business. We have carefully examined these cases and have no quarrel regarding the principles therein announced when applied to the particular facts therein stated.

■■■ The general principle on which they all agree is to the effect: That it is the duty of one, who conducts a business in a building to which the public is invited, to maintain such building in a reasonable condition of safety. This duty extends to keeping the floor ordi-

narily safe to walk upon. If through some unforeseen cause, a hazardous condition is created, the landlord should have a reasonable time after notice, actual or constructive of the defect, in which to correct it. The patrons of the business having occasion to enter the building have a right to assume that this duty has been complied with or discharged, notwithstanding that the condition of the floor could have been seen if the patron "exercised a reasonable alertness". To excuse the landlord on this ground, the condition of the floor must have been such that the customer of "ordinary alertness" would be put on notice that the condition was such as to make it hazardous to walk upon the floor. This does not conflict with the principles laid down in *Lyons v. Lich*, 145 Or. 606 (28 P. (2d) 872).

The plaintiff went into the building of defendant for a legitimate purpose; she slipped and fell on the floor and sustained injury. The floor was not made of the ordinary flooring material, but was made of marble, slippery when wet. On a rainy day, the customers might have carried more or less water into the bank on their shoes and umbrellas in a sufficient quantity to wet a considerable portion of the floor-space utilized by them, but there is no evidence to that effect in this case, nor were there any allegations in the pleadings that rainwater was so carried in. Assuming for the sake of the argument, that the water on the floor had been so carried in, although the place where the plaintiff fell was more than 20 feet from the entrance and up a flight of steps, defendant knew that this condition existed and it was its duty to provide against it. We have no right to assume that the "pasty, muddy water", described by plaintiff as being on the floor, was rainwater carried in by the customer's shoes and umbrellas or otherwise.

It was not necessary to have some one mop up after each customer who entered. There are many other ways by which the floor could have been made safe for the patrons. But even if we should accept the position that defendant should have a reasonable time, after knowledge of the slippery condition of the floor, to remedy it, the language of the manager of defendant as he assisted plaintiff to her feet, "I told them to clean that up and they haven't done it", is quite susceptible of being construed as meaning that there had been sufficient time, before the accident, to have complied with the order. It showed a knowledge on the manager's part of the dangerous condition of the floor. There is no evidence that warning had been given to the patrons. At any rate no one would know better than the bank manager whether there was reasonable time in which to comply with his order, and he is silent on that subject. Reasonable minds might differ as to the construction to be given to the manager's words.

██ Assuming, as we must in considering whether a nonsuit should be granted, that the uncontradicted evidence introduced by plaintiff is true, the plaintiff made out a *prima facie* case and the question should have been submitted to the jury under proper instructions.

The judgment should be reversed and the cause remanded with instructions to set aside the judgment, and for such further proceedings as are not inconsistent herewith.

It is so ordered.

_____

BELT, J. (dissenting). This is a personal injury action. The plaintiff seeks to recover damages for injuries sustained as a result of slipping and falling on the marble floor of the defendant's bank at the

corner of Sixth and Morrison streets in the city of Portland. Plaintiff alleges in her complaint that defendant was negligent in the following particulars:

"(a) That defendant maintained said lobby in a dangerous and slippery condition by allowing quantities of water *and a muddy pasty substance* to accumulate thereon, which resulted in said floor being in a hazardous, slick and slippery condition;

"(b) That defendant carelessly and negligently failed to warn persons, and in particular the plaintiff, in making use of said lobby, of the unusual, hazardous and slippery condition thereof;

"(c) That said defendant, at said time and place, carelessly and negligently failed to remove the water from said floor by mopping or by any other means, and as a result allowed the same to remain in a hazardous, slick and slippery condition;

"(d) That defendant carelessly and negligently failed and neglected to cover said floor with some form of matting to prevent the same from becoming slick and slippery during the rainy season of the year."

The defendant denied the charge of negligence and alleged, as an affirmative defense, that plaintiff was guilty of contributory negligence in that she walked over the floor in a rapid and careless manner without paying any attention to the condition of the floor. The affirmative matter was denied in the reply.

At the conclusion of the plaintiff's case in chief, the court allowed the motion of the defendant for a judgment of involuntary nonsuit. Plaintiff appeals.

The vital questions presented on this appeal are: (1) Is there any evidence tending to show negligence as alleged on the part of the defendant? (2) Can it be said, as a matter of law, that plaintiff was guilty of contributory negligence?

Plaintiff, a woman 37 years of age, went into the defendant's bank for the purpose of transacting busi-

ness. She had been a customer of the bank for several years and was therefore familiar with conditions. On the day in question there had been a "downpour of rain" but immediately preceding her entry into the bank the storm had somewhat subsided. Nevertheless there was, as she says, still a "drizzling rain". The plaintiff thus describes the condition of the floor of the bank lobby and the manner in which she was injured:

"Q. And you entered at this swinging door? A. Yes.

"Q. And about how many steps did you take, would you say, before you had your accident? A. Well, a few steps; two or three; just a few steps.

"Q. And then what happened? A. There were people going to and fro, and there was one man in particular that I was passing, and I angled a little bit to the right, and just about that time I slipped on something slippery and my feet went completely from under me, and I fell with my weight on my right arm and my right hip, and I put my right arm back to keep myself from falling flat.

\* \* \* \* \*

"Q. Just tell the jury about what occurred. A. Well, before I got up I looked at my hand and I noticed that there was a pasty, muddy water all over my hands, and my stockings were wet and the dress, from the hem of my skirt to my hip was wet.

\* \* \* \* \*

"Q. Now you speak about this pasty substance; what was the extent of that? A. As I looked about, I saw there was quite large quantities of it on the floor."

She further testified that Mr. Steenrod, manager of the bank, assisted her in getting up after her fall and that he said, "I am so sorry you took an awful fall. I told them to clean that up and they haven't done it."

It is elementary that in determining the question whether the above evidence established a prima facie case of negligence such evidence must be viewed in the light most favorable to the plaintiff. It is entitled to every reasonable intendment. If reasonable-minded persons might differ in their conclusions as to whether the evidence, if accepted as true, showed a breach of duty on the part of the defendant bank, the issue of negligence would be for the determination of the jury. If, however, the only reasonable deduction to be drawn from the evidence is that the bank had exercised reasonable dilligence in keeping the floor in a safe condition there would be no cause for submission to the jury. The bank was not an insurer. It did, however, owe plaintiff the duty to maintain the floor in a reasonably safe condition and she, in the absence of notice to the contrary, had the right to assume that it was in such condition.

To establish a prima facie case of negligence it was incumbent upon the plaintiff to introduce evidence tending to show: (1) That the bank, through failure to exercise reasonable care, had allowed the floor to become in a dangerous condition as alleged in the complaint; (2) that the bank knew, or ought to have known, of the existence of such dangerous condition; (3) that the bank had knowledge of such condition a sufficient length of time prior to the injury to afford a reasonable opportunity to remedy the same. The failure to show any one of these three essential elements would be fatal to the plaintiff's case.

There are no structural defects in the floor involved. It is not charged that the bank lobby was improperly lighted. Neither are we concerned with cases wherein the slippery condition of the floor was caused by improper oiling or dressing (*McNeil v. Brown & Co.*, 22

F. (2d) 675; *Robinson v. Woolworth Co.,* 80 Mont. 431 (261 P. 253). Likewise cases where water on the floor came from a defective toilet (*Scott v. Kline's, Inc.,* (Mo. App.), 284 S. W. 831) or drinking fountain (*Dudley v. Abraham,* 122 App. Div. 480 (107 N. Y. S. 97)) are not in point. The instant action is based on the failure of the bank to remove the "watery pasty substance" tracked in, without doubt, by customers who had recently been in a rainstorm. It is common knowledge that a marble floor might become slippery and dangerous through muddy water from the shoes of those coming into the bank to transact business. A dripping umbrella might also add to the danger of the situation. What must a bank do under such circumstances? The answer is that it must exercise reasonable care to keep the floor in a safe condition. It would be absurd to expect the employees of the bank to follow every customer with a mop to see to it that every drop of water or foreign substance is immediately wiped up. To hold the bank to such a high degree of care would impose upon it the liability of an insurer. On the other hand, it would hardly be reasonable to say that the bank had performed its full duty to invitees if it knowingly permitted a dangerous condition to continue without exercising reasonable diligence to remedy the same.

It will be remembered that the burden of establishing breach of duty by the bank rests on the plaintiff. Merely to show that there was muddy water on the floor at the time the plaintiff fell is not sufficient. Negligence cannot be inferred from the mere happening of the accident. Plaintiff must go further and introduce evidence tending to show that the alleged dangerous condition of the floor had existed for such a length of

time that, had defendant exercised reasonable care, the "watery pasty substance" would have been removed.

As we view the evidence it is not believed that plaintiff has shown negligence. There is no evidence as to the length of time the floor was permitted to remain in a slippery condition, although knowledge of such condition prior to injury may be inferred from the statement of the manager of the bank that "I told them to clean that up and they haven't done it". It may be that at the time this statement was made the janitor was in the act of getting a broom or mop. Who knows? While reasonable inferences may be drawn from facts proved, the rule does not permit indulgence in mere speculation or conjecture. The most that the evidence shows is the existence of a transient condition caused not by the act of the defendant but by the wet shoes or umbrellas of the patrons of the bank.

Courts generally have made a distinction between cases where some foreign substance like a banana peel was dropped on the floor by an invitee, thereby causing injury, and those wherein the slippery condition of the floor was the natural result of its use during stormy weather: *Kresge Co. v. Fader,* 116 Ohio St. 718 (158 N. E. 174, 58 A. L. R. 132); *Williams v. Kansas City Terminal Ry. Co.,* 288 Mo. 11 (231 S. W. 954); *Bodine v. Goerke Co.,* 102 N. J. Law 642 (133 Atl. 295). Counsel for plaintiff well appreciated the different line of cases for, after the trial court had declared its intention of granting the motion for nonsuit, the complaint, over the objection of the defendant, was amended by interlineation, by inserting the words, "and a muddy pasty substance", as italicized in the above specifications of negligence.

We see nothing in *Lyons v. Lich,* 145 Or. 606 (28 P. (2d) 872), at variance with the conclusions herein

reached. That case, as all cases, must be read in the light of the fact situation before the court for consideration. We may also add that the specifications of negligence in the Lich case are materially different from those involved herein.

Having found that the plaintiff has failed to show any negligence of the defendant bank, the trial court was right in granting the motion for nonsuit.

It is unnecessary to consider the question of contributory negligence.

The judgment of nonsuit, in my opinion, should be affirmed.

RAND, J., concurs in this dissenting opinion.