**MANNING'S, Inc., a corporation, Appellant,**

v.

**Edna M. BLOCH, Appellee.**

**No. 15958.**

United States Court of Appeals Ninth Circuit.

Dec. 12, 1958.

Mautz, Souther, Spaulding, Denecke & Kinsey, Wayne A. Williamson, Portland, Or., for appellant.

McCarty & Rosacker, Glen McCarty; Samuels & Samuels, Portland, Or., for appellee.

Before POPE, CHAMBERS and HAMLEY, Circuit Judges.

POPE, Circuit Judge.

Appellee, a citizen of the State of Oregon, recovered judgment in the court below against appellant, a Washington corporation, for damages suffered by her when she fell on the entranceway to appellant's restaurant in Portland, Oregon. The appeal is based upon the contention that the evidence was insufficient to show negligence on the part of the defendant-appellant Manning's, and that the case should have been taken from the jury.[1]

---

1. While there is a second specification of error referring to an instruction given, the only exception taken was to the court's instruction that the jury could find that defendant installed a floor with insufficient abrasive, or that it had become worn and smooth, "on the ground that there is no evidence to support that instruction except that which would require speculation and conjecture." This is but a further objection as to the sufficiency of the evidence.

The case was tried after a pre-trial order which stated plaintiff's contentions in part as follows:

"A. That at about the hour of 8:30 o'clock in the morning the plaintiff, while entering the defendant's place of business for the purpose of purchasing breakfast therein, was injured as hereinafter complained of by slipping and falling with great force and violence upon the entranceway to said place of business.

"B. That the injuries to this plaintiff, as herein complained of, were caused by the negligence of the defendant in the following particulars, to-wit:

"(a) That the defendant did maintain said entranceway in an extremely slick and dangerous condition, well knowing that the public was required to use said entranceway in entering and leaving said place of business.

"(b) That the defendant did keep and maintain said entranceway without in any way having the same roughened, or without providing a mat of any kind over the said entranceway to prevent people using the same from slipping thereupon.

"(c) That the defendant did permit said entranceway to become wet and slick, when it well knew, or should have known, in the exercise of reasonable care and diligence, the dangers of permitting it to remain in a wet and slick condition.

"(d) That the defendant failed to give any warning whatsoever to its patrons of said dangerous condition.

"(e) That the defendant did know, or should have known, of said dangerous condition for a sufficient length of time prior to said fall within which to correct said condition, but failed to take any steps to correct the same."

On the morning of the accident Mrs. Bloch parked her car near the restaurant and started toward the entrance. It was on a corner. The building line cut diagonally across the corner so as to form a triangular entranceway. The entrance, at the center of the diagonal wall, was through two swinging glass doors. The surface of the exterior triangular entranceway was terrazzo. It was raining at the time and the terrazzo was wet. As Mrs. Bloch reached for the doors she slipped and fell.

In support of its argument that plaintiff failed to make a case, the defendant Manning's relies upon the case of Lyons v. Lich, 145 Or. 606, 28 P.2d 872. This case, appellant says, establishes an Oregon rule that the use of commonly employed floor materials is not negligence, and it points to the evidence, not here in dispute, that terrazzo floors or entranceways are commonly used. In that case plaintiff was leaving after visiting a tenant in an apartment house and fell when she passed over a portion of the vestibule floor which was made of marble. The marble was wet from rain. In the course of its opinion the Oregon court made the following statements: "The above rule expressing the landlord's duty can be clarified by adding that the mere use of marble, tile, hardwood, or any other commonly employed floor material in the construction of a floor is not negligence." At page 611 of 145 Or., at page 874 of 28 P.2d.

"If the owner of an apartment house or other structure invites the public to enter, he is required to exercise ordinary care to maintain his floors in a condition reasonably safe for the purposes of the invitation. Ordinarily, if the floor is without structural defects, he is not required to place mats at entranceways on rainy days, or to mop up rainwater tracked into the entryways by customers, provided the condition of dampness is readily discernible to those who enter." At page 613 of 145 Or., at page 874 of 28 P.2d.

In the recent case of Cowden v. Earley, Or.1958, 327 P.2d 1109, the court quoted with approval the last sentence quoted above.

Apparently the language quoted was largely *obiter* in both cases.[2] But taking it for granted that these quotations are accurate statements of Oregon law, we think the facts of this case prevent their application here, it is noted that the quoted language is: "Ordinarily, *if the floor is without structural defects*, he is not required to place mats at entranceways on rainy days," etc. (Emphasis added.) In this case there was substantial evidence of structural defects, or of a situation which required special precaution against slipping.

An architect, familiar with the entranceway, testified that the place where Mrs. Bloch walked "ramps down quite steep." In fact, he said, it sloped in two different directions—it was "warped." He testified that terrazzo is made of marble or stone aggregates mixed with cement and polished to a high polish; that for exterior work it is customary and desirable to add to the mixture an brasive called alundum, to minimize the possibility of slipping, especially in a wet climate like that of Portland. There was no proof as to whether alundum had or had not been added to this material when it was first laid, although a witness who had worked on it later was of the opinion it contained abrasive because he had to use hard blades to cut it.

But whether it did or did not contain alundum, there was evidence that additional abrasives were required to avoid slipping. About 1950 or 1951, Manning's maintained the entranceway by pasting abrasive felt squares on the terrazzo surface. These were like asphalt tile, in squares, and cemented down tight. Although these created a desired abrasiveness, they had a tendency to buckle,

and so, about 1954 or 1955, Manning's had them replaced by Carborundum strips placed in grooves cut in the terrazzo so that they protruded just above the terrazzo. These were laid parallel to the wall containing the front door, 3 or 4 inches apart, and each strip was a quarter inch wide. However, the strips kept breaking loose and coming out, and Manning's knew this created a hazard. Efforts to repair this condition were made, but at the time of the accident, Manning's manager said a "few" may have been missing. According to the architect mentioned before, a photograph of the terrazzo received in evidence showed that some of these strips, "close to the building line", were broken or worn down. It was along this building line, and parallel with the strips, that Mrs. Bloch walked to get to the door.

It is plain that the jury could well find from this evidence that the defendant knew that this terrazzo, with the "fairly high polish" which the architect described, laid on a "quite steep" slope, was sufficiently slippery so as to require additional precautions to protect pedestrians. The very fact that Manning's first applied the abrasive squares covering, and then inserted the Carborundum strips, was proof of this. See Wigmore, Evidence, 3d ed., § 282. Cf. Palmer v. City of Long Beach, Cal.App., 189 P.2d 62, 67. If a person walked down the slope as Mrs. Bloch did, a four inch space between these strips would furnish a place in which one might step without any abrasive protection whatever, and slipping would be plainly foreseeable.

We hold that the evidence was sufficient to support the verdict.

Judgment affirmed.

---

2. In the Lyons case the court held the evidence sufficient to sustain a verdict for plaintiffs because the lack of lighting, lack of a hand rail and slippery marble "constituted a trap." The language quoted above would appear to have been unnecessary to the decision.

In the Cowden case the quotation from the Lyons case was addressed to a point which the court said "it is not necessary to now decide." [327 P.2d 1112] The case turned on failure of proof of knowledge of the building owner of the claimed defects.