Argued June 8, reversed June 22, 1960

# GROVER *v.* OWENS

353 P. 2d 254

*Asa L. Lewelling* argued the cause for appellant. On the brief were Lewelling & Gies, Salem.

*Orval N. Thompson* argued the cause for respondent. On the brief were Weatherford & Thompson, Albany.

Before McAllister, Chief Justice, and Rossman, Warner, Goodwin and Holman, Justices.

HOLMAN, J. (Pro Tempore)

This is an action for damages for personal injuries suffered by the plaintiff Grover when she fell on the 8th day of March, 1956, while a patron at wrestling matches at the National Guard Armory in Albany, promoted by the defendant Owens. The matches were held on the drill floor, which was the subject of a written lease from the National Guard to defendant. While the lease by its terms covered only the drill floor, which was the main floor of the building, the evidence shows without contradiction that defendant also had the use of the seating in the balcony, the dressing rooms, which were on the same floor as the balcony, and the shower rooms and lavatories, which were in the basement. A sign upon the drill floor informed the patrons of the location of the lavatories. The public, on wrestling nights, had to pay to gain admission to the building.

At the conclusion of the matches on the night in question, plaintiff found it necessary to go to the lavatory and descended the stairs to the basement where there was a waiting or anteroom leading to the lavatory. In the waiting room the entire floor was wet, but the water was deeper in a part of the room which had to be crossed by plaintiff to reach the lavatory on the far side. This condition was known to defendant's employee whose duty it was to take care

of the lavatories. Plaintiff had to wait 10 or 15 minutes for other patrons who were ahead of her. When her turn came, she crossed to the lavatory and, after using it, was returning across the anteroom to the stairway leading to the drill floor when she fell and suffered the injuries for which this action is brought.

Defendant filed a general denial to plaintiff's complaint and an affirmative defense of assumption of risk. There was no plea of contributory negligence. Upon completion of the case, defendant moved for a directed verdict on three grounds: (1) defendant had no control of the lavatory and, therefore, no responsibility for its condition; (2) that there was no evidence defendant was guilty of negligence, as he had breached no duty owed to plaintiff; and (3) plaintiff assumed the risk of any danger encountered. The jury returned a verdict in favor of plaintiff in the sum of $7,825.70. Defendant appeals, assigning as error the court's failure to grant the motion for a directed verdict.

■ Because of the view we take of defendant's contention that plaintiff assumed the risk of the danger involved, it will be unnecessary to consider the other claimed grounds of error.

The plaintiff was an invitee or business visitor on the premises of defendant. Plaintiff was on the premises at the invitation of defendant in connection with defendant's business. She still had this status at the time she used the lavatory.

> "* * * If a toilet or a telephone is provided and maintained for the use of customers, as is usual in theatres and department stores, the customer is an invitee while he makes use of it; * * *." Prosser, Law of Torts, (2d ed) 458, § 78.

Testimony of plaintiff relative to her knowledge

of the conditions in the lavatory and the cause of her slipping is as follows:

"Q Now when you went down the stairs that night, was there any water on the floor of this first room?
"A Yes.

"Q Just describe that water to the jury.
"A Well, as you go through the door there was—about this wide there was a grating, just boards across—

"Q You are indicating about two feet with your hands?
"A Yes, just through the doorway, there is something to step on. There was water on the floor. It was pretty deep that night, a little more than usual, and I just tried to be careful.

"Q You say the water was pretty deep? About how deep would you estimate it to be?
"A Well, sometimes it just came on the floor—

"Q This particular night.
"A It was up—like this in the room on this side, it was up in on the side wall you crossed to get in the doorway. It was always deeper at that place.

"Q About an inch deep?
"A Yes.

"Q How wide was the water?
"A It covered pretty near back to the other wall that night, there was water all over the floor.
"* * * * *

"Q Had you seen the water in this anteroom to the rest room on other nights?
"A Yes.

"Q Do you know over what period of time?
"A Well, usually in the winter and spring.

"Q Was Mr. Elton Owens promoting the matches during those times?
"A Yes.

"Q During those other times, was there any walkway in the anteroom so you could get across the water without getting in it?

"A At times there was a board set up on two by fours to get—after you get in the room.

"Q Was there any board of that nature on March 8?

"A No, not that I remember of.

"* * * * *

"Q Were you walking through the water when your foot slipped?

"A Yes.

"Q And was the floor slippery under your foot?

"A Yes.

"Q Was it more slippery than when you first came in, going to the rest room?

"A No.

"* * * * *

"Q Mrs. Grover, on how many occasions before this particular time have you seen water in this rest room?

"A Well, I couldn't say exactly how many times.

"Q Well, I wouldn't expect you to know exactly, but could you give us a rough idea.

"A Several times.

"Q By 'several' do you mean more than three or four times?

"A Yes.

"Q Had you ever seen anyone fall in there before?

"A Yes.

"Q On more than one occasion?

"A Yes.

"* * * * *

"Q Well, isn't that actually the fact, you don't know what happened except you did fall?

"A Well, I slipped in that water."

■ One who enters upon the premises of another, even as a business visitor, assumes the danger of all known or obvious conditions which he finds there. The consent to the assumption of the risk is found in going ahead with full knowledge of it. See Prosser, Law of Torts (2d ed) 308, § 55. The Restatement of the Law of Torts 491, § 893, states the rule as follows:

> "A person who knows that another has created a danger or is doing a dangerous act or that the land or chattels of another are dangerous, and who nevertheless chooses to enter upon or to remain within or permit his things to remain within the area of risk is not entitled to recover for harm unintentionally caused to him or his things by the other's conduct or by the condition of the premises, except where the other's conduct constitutes a breach of duty to him or to a third person and has created a situation in which it is reasonably necessary to undergo a risk in order to protect a right or avert a harm."

In its comment on the above rule the Restatement says as follows:

> "The second type of situation in which assumption of risk constitutes a defense is where the plaintiff enters the land or uses the chattels of the defendant or otherwise associates himself with the defendant's activities, having no right or privilege to do so, save that derived from the defendant's consent. In a situation of this sort the defendant has no greater duty than to inform the plaintiff of the danger of which the defendant knows or should be aware; if the plaintiff discovers the existence of such danger, a breach of duty by the defendant in failing to notify the plaintiff of it does not cause him to be liable. The typical illustration of this situation is the business guest who remains on the premises after discovering a dangerous condition (see Illustration 3)."

Illustration 3 referred to in the comment above is as follows:

> "A, a storekeeper, with knowledge of the facts, fails to put a guard around or to give warning of an open trapdoor in the floor of his poorly lighted shop. B, upon entering the shop, sees the opening and although realizing that because of the slipperiness of the adjacent floor he is likely to fall through the opening, nevertheless continues towards it in order to purchase goods from a counter beyond it. He falls through and is hurt. A is not liable to B."

■ It is apparent from plaintiff's testimony that she had full knowledge of the wet condition of the lavatory from many prior experiences, and the dangers involved in its use had previously been amply demonstrated to her. Plaintiff contends, however, there was evidence of a deposit on the floor in addition to the water, which deposit caused her to slip, and about which she had no knowledge and was not warned and, therefore, she did not assume this risk. Prosser states the proposition on which she relies as follows:

> " 'Knowledge of the risk is the watchword of assumption of risk.' Ordinarily the plaintiff will not be taken to assume any risk of conditions or activities of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself. 'A defect and the danger arising from it are not necessarily to be identified, and a person may know of one without appreciating the other.' " Prosser, Law of Torts (2d ed) 309, § 55.

The evidence upon which plaintiff has to depend for the application of this rule comes from her own testimony that the floor was slick and from defendant's

employee who had charge of the lavatory, whose testimony was as follows:

"Q Wouldn't that water continuously running in there make that part of the floor a little different—

"A A different color. You could tell it was running.

"Q What color was it?

"A Kind of light colored, stained from the water.

"Q Did it make a stain on the floor?

"A Well, kind of light.

"Q You had painted the floor?

"A We did years ago, yes.

"Q Did the water leave a deposit there on the part it reached over?

"A Yes.

"Q And you could tell where the track was?

"A Yes.

"Q Because the water had left a deposit there?

"A Yes.

"Q What was the nature of the deposit there that made the discoloration?

"A I don't know if it was from the water or what, just a spot. It isn't clean like the other.

"Q It wasn't clear like the other?

"A That's right. It was a kind of a stain. You could tell where the water went through."

■ From this we can only draw the conclusion that the water deposited a stain on the floor. People do not slip on stains. We believe there is no evidence that anything caused her to fall other than the water. Even if there was something other than water which caused her to fall, she knew of the danger because she had seen others slip and fall more than once. Therefore, there could be no trap insofar as she was con-

cerned, as was the situation in *Lyons v. Lich,* 145 Or 606, 28 P2d 872.

The doctrine of assumption of risk has been recognized by this court for years and has been applied to situations other than master and servant. See *Hunt v. Portland Baseball Club,* 207 Or 337, 296 P2d 495.

It is the opinion of this court that plaintiff's own testimony demonstrates as a matter of law that she had assumed the risk involved, and defendant's motion for a directed verdict should have been granted. The judgment of the trial court is reversed.