Argued July 1, affirmed September 5, 1963

# KLEIN *v.* MONTGOMERY WARD & CO.

384 P. 2d 978

*Carl R. Neil,* Portland, argued the cause for appellant. On the brief were Carl R. Neil, Jerard S. Weigler, Krause, Lindsay & Nahstoll, Loyalty Building, Portland 4, Oregon.

*A. Allan Franzke,* Portland, argued the cause for respondent. On the brief were A. Allan Franzke, James F. Spiekerman, Mautz, Souther, Spaulding, Kinsey & Williamson, Board of Trade Building, Portland 4, Oregon.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Emeline B. Klein, from a judgment which the circuit court entered in favor of the defendant, Montgomery Ward & Co. The action which ended in that manner was instituted by the plaintiff to recover damages for an injury which she suffered when she fell down a flight of four steps in an entrance way of the defendant's Portland store. The challenged judgment was entered after (1) the defendant had moved unsuccessfully for a directed verdict; (2) the jury had returned a verdict for the plaintiff; and (3) the defendant's motion for the entry of judgment in its favor, notwithstanding the verdict, had been allowed.

The plaintiff presents two assignments of error. The first challenges the ruling which entered judgment in the defendant's favor notwithstanding the verdict, and the second questions a ruling which sustained the defendant's objections to the reception in evidence of a Portland ordinance which provides in the instances

to which it is applicable that handrails must be placed not farther apart than 66 inches upon staircases that are 88 inches or more in width.

The complaint made several charges of negligence but only two of them were submitted to the jury. Appellant's (plaintiff's) brief states, "The Court, however, submitted to the jury only two of plaintiff's specifications of negligence, relating to the condition of the step and, under the common law, the lack of a middle handrail." The plaintiff does not contend that error was committed when the other specifications were not submitted to the jury.

November 19, 1960 the plaintiff and her husband drove their automobile to the defendant's store where the plaintiff intended to do some shopping. After the plaintiff's husband had parked the car in the defendant's parking lot, the two proceeded to enter the store through its easterly entrance. The latter was slightly more than 30 feet broad and consisted of a series of seven doors. When a customer had gone through one of the doors, he was in an area 30 feet long and 42 inches broad. We will deem it a vestibule. If after the customer had walked ahead 42 inches, after going through the door, he had crossed the vestibule and was upon the upper of the flight of four steps. When he descended the steps, he was upon the store's first floor. The plaintiff immediately before accident had taken, in part, the course just described; that is she had gone through one of the doors, had walked ahead 42 inches and had come to the top of the four steps. There something went wrong and she fell down the stairs.

Upon direct examination by her attorney, the plain-

tiff testified that she did not know what caused her to
fall. Her testimony was:

"Q. Well, do you specifically know what caused
you to fall?

"A. I couldn't say. All I know is my foot
slipped off the step and I was down there."

The plaintiff testified that her health had been
good. She operated a small coffee shop. At the time
of her mishap the plaintiff was wearing "walking
shoes," so she swore, and added that they had "a full
heel."

On each side of the broad vestibule area and stair-
case, there was a short wall at right angles to the
stairs. Fastened into each wall was a handrail for the
use of anyone who went up or down the stairs at that
point. Besides those two handrails there were four
more in this flight of steps. They occurred at intervals
of 81 inches.

The plaintiff did not enter the store through a door
that was adjacent to the vestibule walls, but through
a door which was near the center of the entrance. She
testified that she had been in the store many times, but
had used this entrance "seldom."

The door through which the plaintiff entered was
a double door. Its width was six feet. Each of its two
component doors was, therefore, three feet wide. The
two component doors swung open from their middle,
and opened outwardly. Each was fastened on its far
side by hinges to a column-like form that stood im-
mediately adjacent to that side of the door, and sepa-
rated the latter from the next set of doors.

On each side of the double door through which the
plaintiff entered there was one of the handrails that

we mentioned. The handrail was fastened at its upper end to the column that stood adjacent to the door. The handrail was about 30 inches above the vestibule floor. It extended from the column, parallel to the vestibule floor until it reached a point above the upper step, where it bent downward at the same angle of the steps until it was above the lowest of the four steps. There it turned directly downward and terminated in that step.

The distance between the handrails which stood at the sides of the door through which the plaintiff entered the store was 81 inches. That, as we have said, was the distance that separated all of the handrails. Thus when the plaintiff passed through the door there was a handrail to right and another to her left. The plaintiff did not mention through which of the two doors she came. However, she testified that neither handrail was within reach. We have mentioned that the double door through which the plaintiff entered opened from its middle.

The plaintiff's husband held the door open while she walked through. Observation teaches that one who holds a double door open for another, holds open only one of its two component parts. Therefore, no one enters through the center of a double door. He enters to the right or to the left of the center, depending upon which of the two component doors was open. Since the total distance between the handrails was 81 inches, the plaintiff upon entering through the double door must have been within arm length of a handrail. Had she moved slightly to the right or to the left she could have grasped a handrail. She made no effort to do so. She knew of their presence. She and her husband were the only people in the entrance way when she fell.

In the following testimony the plaintiff described her fall:

"A. Well, my husband opened the door and I went to step off of the top step to go down these stairs, and I remember my foot slipping over the—like this (demonstrating)—and the next thing I knew I was down at the bottom of the stairs, all crumpled up.

"Q. Well do you specifically know what caused you to fall?

"A. I couldn't say. All I know is my foot slipped off of that step and I was down there. It just happened so fast that actually I didn't realize until I was down there what had happened to me.

\* \* \* \* \*

"Q. What was the condition of your clothes?

"A. Well, my jacket,—like I say, I had never worn my white jacket before; it was the first time I had ever worn it, and it was wet and muddy from down there on the floor, and my black skirt was a mess from mud and water where I had fell."

November 19, 1960, the day of the accident, was a very rainy day. As we noticed through quotation of the plaintiff's testimony her clothing was "wet and muddy" after the fall. We observe, however that after the plaintiff had used those words she added "from down there on the floor." Possibly she meant that the water and mud were picked up by her garments "from down there on the floor." The plaintiff, who is the only one who described the accident and its incidents, did not testify that there was any water, mud or other substance on the steps or the floor of the vestibule.

She testified:

"I know when I came in the store I was watching where I was going and I knew I had those steps to

go down and I just went to step down and the next thing I knew I was down at the bottom. * * *

"Q. Well, you say you were watching where you were going. Did you at any time look there where your foot was when you fell?

"A. I glanced.

"Q. You didn't see anything there that alarmed you?

"A. I don't remember of anything—I just don't remember of anything."

The plaintiff's testimony just quoted warrants a belief that she noticed no water, mud or other material upon the steps or upon the floor of the vestibule. It will be noticed that although she "glanced" at the place upon the steps where her foot was when she fell she noticed no foreign material there. We have stated that no one else testified upon this subject. The defendant presented no evidence. The plaintiff's husband did not testify. Accordingly, if the water and mud that were upon the plaintiff's garments after the fall, were picked up "from down there on the floor" there is no evidence in the record that the steps, especially not the one upon which her fall started, contained any water, mud or other susbstance. But if the water and mud were picked up from the steps, the record does not indicate how long they were there or that the defendant knew of their presence.

The edge of each step in the flight of four was protected by a metal strip, which Charles G. Davis, an architect who testified for the plaintiff, termed an "extruded steel nosing." Mr. Davis said that the "nosing" was three inches wide and that its purpose was "to provide a wearing as well as a non-slip surface." He thought that water upon the nosing could cause it to become slippery. Mr. Davis had not seen

the entranceway and the steps until a year and a half after the plaintiff's fall. He testified that on the day of his visit to the defendant's establishment the metal strip was "somewhat worn." He did not mention the degree of wear to which it had been subjected, nor did he or any one else say that its condition of "somewhat worn" lessened its effectiveness or required its replacement. No one mentioned the condition of the metal strip at the time of the fall. Mr. Davis was the only witness who testified concerning the strip.

The complaint alleges that the defendant was negligent "in not constructing a middle handrail down said stairway at the center of said entrance doors to permit customers and other persons attempting to descend the same to conveniently make use thereof, and prevent their falling down."

We have mentioned that the present handrails are separated from each other by 81 inches of space. If a middle handrail were added they would be separated by only 40 and one half inches of space. If a middle one were built it would stand directly in front of a person who came through the door.

Plaintiff's witness, Davis, testified that the spacing of handrails at intervals of 81 inches was "somewhat greater than current practice." He stated that current practice favors five and one half feet. Mr. Davis testified that a handrail placed in the center of the space immediately in front of the double doors might create dangers and testified, "If I were faced with the problem, I personally would find another solution than to put a rail in the middle."

The complaint alleges that January 26, 1956 the City of Portland enacted an ordinance which set forth minimum standards for the construction of stairways in buildings. It required "every stairway more than

eighty-eight inches (88″) in width shall have intermediate handrails dividing the stairway into portions not more than sixty-six inches (66″) in width." The ordinance specified that in the construction of new buildings compliance with the ordinance was mandatory. It contained provisions applicable to additions, alterations and repairs of existing structures. The defendant's building was constructed many years prior to January 26, 1956.

After the ordinance was enacted and before the plaintiff's injury was suffered, the defendant made some changes to the door openings in its elevator shafts. The plaintiff claims that that work required the defendant to conform to the demands of the staircase ordinance.

■ Some of the sections of the staircase ordinance require a building owner, who alters or repairs his building, to comply with its demands if the cost of the work equals the percentage of the value of the building that is set forth in the ordinance. Since neither the cost of the alterations nor the value of the building is disclosed by the record, these sections of the ordinance have no application to this case. Other sections of the ordinance require an owner who makes a structural alteration or addition to his building to comply with the staircase ordinance. The building inspector in the city's employ who testified did not deem that the alterations which were made pertaining to the elevator shaft were structural. The building inspector's testimony is the only evidence upon the subject.

■ The plaintiff was an invitee when she entered the defendant's store, and it was the duty of the defendant to have its premises in a reasonably safe condition for the reception of its customers. *Miller v. Safeway Stores,* 219 Or 139, 312 P2d 577, 346 P2d 647,

and *Lee v. Meier & Frank Co.,* 166 Or 600, 114 P2d 136.

The evidence reviewed in preceding paragraphs renders it impossible to say that there was mud or water upon the steps; it is especially impossible to say that there was a foreign substance upon the top step where the plaintiff placed her feet immediately before her fall. She conceded, as we have seen, that she had glanced at that spot before her mishap occurred and had seen nothing there. Since she saw nothing, it is impossible for us, who did not have the benefit of a glance, to take a contrary view. Hers was the only testimony upon the subject. But, if we assume that there was mud or water upon the steps, we face the situation that the record contains no evidence whatever showing how long the conjectured material was there. *Cowden v. Earley,* 214 Or 384, 327 P2d 1109 holds that an invitee who claims that he slipped upon a foreign substance that was upon the floor or stairs of the owner's structure must establish:

"(a) That the substance was placed there by the occupant (owner), or

"(b) That the occupant knew that the substance was there and failed to use reasonable diligence to remove it, or

"(c) That the foreign substance had been there for such a length of time that the occupant should, by the exercise of reasonable diligence, have discovered and removed it."

Judgment for the plaintiff in the case was reversed in part because of the absence of evidence that the defendant had knowledge of the foreign substance or should have known of it.

In *Gill v. Meier & Frank Co.,* 208 Or 536, 303 P2d 211 in which the plaintiff claimed that her foot slipped

upon a watery substance on the floor of the defendant's mercantile establishment, this court said, "It was not required to have some one mop up after each customer who entered." In that case, as in this, the plaintiff claimed that the day had been one of heavy rainfall.

The plaintiff depends much upon *Lyons v. Lich,* 145 Or 606, 28 P2d 872, and *Ritter v. Beals,* 225 Or 504, 358 P2d 1080. We remain satisfied with the holdings in those two cases and with the principles of law that they employed, but do not believe that their facts are sufficiently similar to those now before us to warrant us in appropriating space to show the dissimilarity.

It is our belief that the plaintiff did not care for the help that a handrail can give. She had confidence in herself and was neither aged or infirm. A handrail was immediately at hand, if, upon entering the store, she wished to use one. At most, a slight movement to the right or to the left would have placed her at the handrail. But, she made no effort to grasp one.

In *Laird v. T. W. Mather, Inc.,* 51 Cal 2d 210, 331 P2d 617, the handrail upon the steps in the defendant's store that ran to the basement terminated a step and a half short of the full length of the stairway. The plaintiff, a woman 79 years of age, undertook to descend the stairs and used the handrail for support. At least 50 per cent of the defendant's customers were over 65-70 years of age. When the plaintiff reached the end of the handrail, she assumed that she had come to the end of the stairs and stepped forward. In so doing, she took a bad fall. In sustaining a judgment for the plaintiff, the court said:

"* * * In Holmes v. Moesser, 120 Cal. App2d 612, 262 P2d 27, the plaintiff fell on stairs that did not have a handrail even though a statute required that one be provided. In affirming a judgment of

nonsuit, the court held that the absence of a handrail is not actionable negligence when there is no showing that this absence caused or contributed to the plaintiff's fall. In the present case there is evidence that plaintiff's fall was caused by the fact that the railing did not run the full length of the stairway. Marple v. Manspeaker, 88 Cal 2d 682, 263 P 1022; Harpke v. Lankershim Estates, 103 Cal App 2d 143, 229 P2d 103; and Darrach v. Trustees of S.F. Medical Ass'n, 121 Cal App 2d 362, 263 P2d 469, are likewise not controlling, for they hold only that no inference of negligence arises from the mere proof of a fall on a stairway. In all these cases the plaintiff's fall was left unexplained; there was no evidence that the particular stairs were unsafe or dangerous, that the defendant knew or should have known of a dangerous condition, or that the plaintiff fell because of any unsafe condition."

■ If the plaintiff upon entering the defendant's store had wished for the security of a handrail she would have reached for one. She would not have testified, as she did, that she was unable to account for her fall. We do not believe that the placing of the handrails was the cause in fact of the plaintiff's injury.

The assignments of error are without merit. The challenged judgment is affirmed.