Argued October 5, 1967, reversed and remanded February 21, 1968

PRIBBLE, *Appellant, v.* SAFEWAY STORES,
INC., *Respondent.*

437 P. 2d 745

*Harry A. Slack, Jr.,* Coquille, argued the cause for appellant. With him on the briefs were Slack & Slack, Coquille.

*John T. Foss,* Coos Bay, argued the cause for respondent. With him on the brief were McKeown, Newhouse & Johansen, Coos Bay.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

DENECKE, J.

Plaintiff slipped and fell in defendant's store. At the trial of the action for damages for injuries received from the fall the trial court granted Safeway's motion for an involuntary nonsuit, and plaintiff appeals.

The plaintiff entered the Safeway store, at Coquille, about noon in December. It was a rainy day. She slipped when she stepped on a wet area just inside the entrance. The floor covering was a commonly used type of asphalt tile. The wetness resulted from water

being brought in upon the shoes of customers and drippings from customers' rain clothes. It was described as "just a lot of footprints," "wet and muddy," and as having "no measurable depth." The plaintiff testified that after she slipped she observed a "puddle" next to the area on which she slipped.

The tile was "multiple color, dark brown and tan." Plaintiff was wearing rubber soles and low heels. The entrance door was glass. Before she fell she did not see the condition of the floor. She testified: "No, I had just entered, opening the door and it happened so quickly, I didn't have time to look at the floor."

A witness, who had been the assistant manager of the store at the time of the plaintiff's fall, testified that he knew of the wet and muddy condition of the floor and this always existed when it rained. He also testified that he knew that when the floor was wet it became "slippery and slick." He further testified: "Tile floor, when it is wet, would always be slippery." The former manager testified that this area had been mopped three or four times earlier that day.

Another witness, Mrs. Clayton, testified that about 15 to 20 minutes before plaintiff fell, she had slipped on the same spot where plaintiff fell. Mrs. Clayton observed just after she slipped that the floor was wet and muddy. She did not notice the condition of the floor before she slipped.

■ This case involves only a question of the defendant's duty. The plantiff was not charged with contributory negligence.

*Cowden v. Earley*, 214 Or 384, 387, 327 P2d 1109 (1958), states the rule governing store slipping cases as follows:

"This rule of law applying to a case of this kind

is well established. An invitee who is injured by slipping on a foreign substance on the floor or stairs of business property must, in order to recover from the occupant having control of said property, show either:

"(a) That the substance was placed there by the occupant, or

"(b) That the occupant knew that the substance was there and failed to use reasonable diligence to remove it, or

"(c) That the foreign substance had been there for such a length of time that the occupant should, by the exercise of reasonable diligence, have discovered and removed it."

*Klein v. Montgomery Ward & Co.,* 235 Or 315, 323, 384 P2d 978 (1963), states it more succinctly as follows: "* * * it was the duty of the defendant to have its premises in a reasonably safe condition for the reception of its customers. * * *"

■ Water is a foreign substance comparable to fresh wax or a banana peel. Water was the foreign substance in *Cowden v. Earley,* supra (214 Or 384). In the instant case the store operator knew of the presence of the foreign substance and knew that the water made the floor slippery.

By all the usual rules governing cases concerning customers slipping in stores, the plaintiff should be entitled to go to the jury. However, as the defendant points out, and as the trial court observed, this court has previously held in a similar case that there was no substantial evidence of negligence. *Gill v. Meier & Frank Co.,* 208 Or 536, 537, 303 P2d 211 (1956). The only reason stated in that opinion is: "It was the duty of the defendant to maintain the floor of its building in a reasonably safe condition. But the defendant was not an insurer of plaintiff's safety. It was not required

'to have some one mop up after each customer who entered.'"

However, in *Lopp v. First National Bank,* 151 Or 634, 640, 51 P2d 261 (1935), the plaintiff slipped on a wet place on the bank's marble floor and the court reversed the trial court's granting of defendant's motion for nonsuit. It is not certain what the result would have been if the majority of the court had believed that the water had been carried in by customers walking in out of the rain. Mr. Justice BELT noted in his dissent: "Courts generally have made a distinction between cases where some foreign substance like a banana peel was dropped on the floor by an invitee, thereby causing injury, and those wherein the slippery condition of the floor was the natural result of its use during stormy weather." 151 Or at 645.

One possible theory by which the court could have reached the result it did in *Gill v. Meier & Frank Co.,* supra (208 Or 536), was that the court could have concluded that a storekeeper cannot reasonably make his store safe when customers are constantly bringing in water upon their shoes and clothing. However, we observed in *Lopp v. First National Bank,* supra (151 Or at 640): "It was not necessary to have some one mop up after each customer who entered. There are many other ways by which the floor could have been made safe for the patrons."

In *Manning's, Inc. v. Bloch,* 261 F2d 876 (9th Cir 1958), the plaintiff slipped on the exterior portion of a terrazzo entrance which was wet because of customers tracking in moisture. The court ostensibly applied Oregon law but was able to distinguish *Lyons v. Lich,* 145 Or 606, 28 P2d 872 (1934), and other applicable Oregon decisions and affirmed a verdict for the plaintiff. It observed that surfaces that become slick when

wet can be made safe by the application of various kinds of abrasives.

We constantly see the use of mats and rugs in entrance ways to avoid the consequences of a wet surface.

■ A jury could reasonably find that a storekeeper can make his floor safe although it is wetted by customers coming in from the rain, and if this court previously concluded to the contrary, it was in error.

We believe that the more likely basis for the decision in *Gill v. Meier & Frank Co.,* supra (208 Or 536), was the belief that the proof in that case called for an application of the rule that the possessor of land is never liable for a hazardous condition which is known to the invitee.

That rule has been applied or stated in Oregon cases in which there was water on the floor surface.

■ In *Lyons v. Lich,* supra (145 Or at 612-613), we stated as dictum: "Ordinarily if the floor is without structural defects, he [the landlord] is not required to place mats at entrance ways on rainy days, nor to mop up rainwater tracked into the entryway by customers, *provided the condition of dampness is readily discernible to those who enter.*" (Emphasis added.) To the same effect, *Lopp v. First National Bank,* supra (151 Or at 639), and *Wells v. Rockford Grange No. 501,* 229 Or 356, 358-359, 367 P2d 435 (1961).①

---

① In Lopp v. First National Bank, supra (151 Or at 639), we stated:

"* * * If through some unforeseen cause, a hazardous condition is created, the landlord should have a reasonable time after notice, actual or constructive of the defect, in which to correct it. The patrons of the business having occasion to enter the building have a right to assume that this duty has

The rule referred to in the above cases is not applicable in the instant case because here it is a question of fact whether or not the plaintiff knew or should have known of the slippery condition. The plaintiff and the other witness who slipped earlier both testified that they did not observe the condition before they slipped. It should be remembered that the slippery area was just inside the entrance door.

It may be argued that Oregonians are on notice that on rainy days water is carried inside stores and entrance ways are always slippery under such conditions. We cannot, as a matter of law, impute this knowledge to store customers. From our experience we know that the floor surfaces of many buildings can be and are constructed and maintained so that water does not make them slippery.

In addition, even if the plaintiff knew or should have known of the danger, the rule referred to in the above-cited cases was recently modified in *Dawson v. Payless for Drugs,* 248 Or 334, 433 P2d 1019 (1967). We there held that under some circumstances a pos-

been complied with or discharged, notwithstanding that the condition of the floor could have been seen if the patron 'exercised a reasonable alertness'. To excuse the landlord on this ground, the condition of the floor must have been such that the customer of 'ordinary alertness' would be put on notice that the condition was such as to make it hazardous to walk upon the floor.  *  *  *"

"It will be noticed that as the plaintiff descended the stairs leading into the basement she observed that a man by the name of Rough was cleaning the floor that lay ahead of her. The incident happened in broad daylight and the area ahead was plainly visible.  *  *  *

"The following decisions hold that under the evidence above reviewed the defendant was not negligent: *Grover v. Owens,* 222 Or 496, 353 P2d 254; *Cowden v. Earley,* 214 Or 384, 327 P2d 1109; *Gill v. Meier & Frank Co.,* 208 Or 536, 303 P2d 211; *Lyons v. Lich,* 145 Or 606, 28 P2d 872." Wells v. Rockford Grange No. 501, supra (229 Or at 358-359).

sessor of land might be liable for a dangerous condition known both to the possessor and the invitee. In that case the plaintiff customer slipped upon the icy parking lot of the storekeeper. The storekeeper knew of the ice and the danger it presented and so did the customer. We reversed the trial court's granting of defendant's motion for an involuntary nonsuit. We held that under some circumstances the customer's knowledge of the hazard would not cause the storekeeper to be free of negligence. These circumstances are: First, as stated by 2 Restatement (Second), Torts § 343A, "the possessor should anticipate the harm despite such knowledge or obviousness." 433 P2d at 1021. Second, "[t]he duty [of the possessor] arises only when the condition is *unreasonably* dangerous." 433 P2d at 1022.

■ The danger in the present case,—moisture on a portion of an asphalt tile floor,—is probably not as high on the hazard scale as the danger in *Dawson v. Payless for Drugs,* supra,—ice on the entire parking lot. Nevertheless, a slippery entrance way can fall into the unreasonably dangerous class. This is illustrated by a statement of conditions not deemed unreasonably dangerous: "If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight. This is true of the flight of ordinary stairs in a usual place in the daylight. It is also true of ordinary curbing along a sidewalk * * *." 2 Harper and James, The Law of Torts, 1490, § 27.13 (1956). An asphalt tile floor made slippery by water is entirely different than a flight of ordinary stairs or an ordinary curbing.

As we stated earlier, the rationale for the decision

in *Gill v. Meier & Frank Co.,* supra (208 Or 536), is not certain; however, we have herein concluded that either possible basis is incorrect, particularly in light of our decision in *Dawson v. Payless for Drugs,* supra. Therefore, *Gill v. Meier & Frank Co.,* supra, is overruled.[2]

The trial court's granting of the motion for an involuntary nonsuit was in error.

Reversed and remanded.

McALLISTER, J., dissenting.

The majority opinion imposes on every storekeeper a rule of strict liability for an injury to a customer who slips and falls because of water tracked into his store by other customers. The storekeeper is made an insurer of the safety of a customer who is injured by a normal condition encountered daily during the rainy season in Oregon by the entire populace.

There is no charge in this case of improper construction of either the store entrance or the floor. There is no charge that the commonly used asphalt tile covering the floor was hazardous. This was a typical store entrance and a floor covering in common use in thousands upon thousands of stores throughout this region.

The situation was one encountered by every person who shops in Oregon during our rainy season—a floor wet with water tracked in by customers on their shoes and by water dripping from umbrellas and raincoats. These conditions are not confined to shops, but are en-

---

[2] The decisions from other jurisdictions are split in cases in which the facts are comparable to those in this case. Messina v. Rhodes Company, 67 Wash2d 19, 406 P2d 312 (1965), is in accord with our views. The cases are collected in an Annotation in 62 ALR2d 6 (1958), particularly at §§ 10 and 13.

countered everywhere—on the streets, and even in our homes. Why should strict liability be imposed under these circumstances?

I think *Gill v. Meier & Frank Co.*, 208 Or 536, 303 P2d 211 (1956), was properly decided. It is mere sophistry to say that that case was decided on the ground that the storekeeper "is never liable for a hazardous condition which is known to the invitee." The *ratio decidendi* of the opinion is crystal clear. I think *Gill v. Meier & Frank Co.* should control our decision in this case.

The majority relies on *Manning's, Inc. v. Bloch*, 261 F2d 876 (9th Cir 1958), but fails to mention the structural defect in the form of a "quite steep" slope of the entrance way which was decisive in that case.

I dissent.

PERRY, C. J., and GOODWIN, J., concur in this opinion.