Argued February 8, affirmed April 26, 1961

## BAKER *v.* ROSE CITY TRANSIT CO.

361 P. 2d 257

Department 1.

Appeal from Circuit Court, Multnomah County.

JAMES W. CRAWFORD, Judge.

*Charles P. A. Paulson,* Portland, argued the cause for appellant. On the brief were Peterson & Lent and Philip A. Levin, Portland.

*Lamar Tooze,* Portland, argued the cause for respondent. On the brief were Tooze, Kerr, Tooze & Morrell and Edwin J. Peterson, Portland.

Before McALLISTER, Chief Justice and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

LUSK, J.

The plaintiff has appealed from a judgment of involuntary nonsuit in an action for damages for personal injury based on negligence.

Her claim is that in alighting from one of the defendant's buses she slipped because of mud and leaves on the step and injured her left leg. Omitting two specifications of negligence which were abandoned, she alleged in her complaint that the defendant was negligent as follows:

1. In allowing mud, water, and debris to collect upon the step of the bus.

2. In failing and neglecting to inspect said steps before plaintiff alighted from the bus.

3. In failing to warn plaintiff of the hazards and slippery condition of the step.

4. In equipping the bus with a step having a rough metal edge.

There is evidence of the following facts:

On the morning of February 5, 1958, plaintiff left her home on the east side of the city of Portland bound for her place of employment on the west side. She rode as a passenger in a Sandy bus operated by the defendant and at about 8:15, a.m., upon arrival at Fifth Avenue and Alder Street in downtown Portland, she alighted from the bus in order to transfer to an Irvington bus which would take her to her des-

tination at Eighteenth and Mill. She paid her fare and was issued a transfer. She waited on the sidewalk until a bus bearing the sign "Irvington" stopped. She stepped up to the front platform and asked the operator if he was going to the garage or to Eighteenth and Mill. He answered that he was going to the garage, whereupon she stepped down from the platform to the step below, slipped on that step, and cut and bruised her left leg. She testified:

"A As I was stepping backwards off of the bus my left foot slipped on something on the bus step, and I went down, causing injury to my left leg.

"Q What injury did you get to your left leg?

"A A cut and abrasion, whatever you call it.

"Q Where on your leg?

"A About the middle of my leg, right here (indicating), to be exact.

"Q You are indicating now the front part of your left leg below your knee. I can't see how far below your knee. Is that about half way up your leg?

"A About half way.

"Q Now Mrs. Baker, did you see the step immediately after that occurred?

"A I didn't notice it, because the light had changed, and the bus driver shut the door and drove off right away.

"Q Did you see any, did you see the substance or did you see the surface of the step?

"A The only fleeting glimpse I got before the door was shut was that the edge of the step was rough.

"Q Could you state whether or not there was any foreign substance on it?

"A I didn't get a chance to see."

The plaintiff later testified:

"Q (By Mr. Peterson) Now what was the condition of the step?

"A It was slick.

"Q Now do you know what made it slick?

"A Mud and debris on the step.

"Q Now Mrs. Baker, can you describe the wound which was on your leg? Can you describe the wound as near as you can do so, to the jury?

"A Right when I first got hurt?

"Q When you first looked at it. Can you describe the wound?

"A It was an abrasion or a cut.

"Q Don't use any medical terms. You just tell us what it looked like to you.

"A It was a cut just like you't cut yourself on a rough metal. It was kind of a jagged cut, like something had—

"MR. TOOZE: If your Honor please, I object to the witness' drawing a conclusion it was done by a piece of metal. I move that part of her answer be stricken.

"THE COURT: Yes. Just state what you observed and felt. I will strike the answer. The jury will disregard it.

"THE WITNESS: It felt like a jagged cut..

"Q (By Mr. Peterson) Now where was that in relation to your, the front part of your leg?

"A About half way between my knee and foot.

"Q Do you have a scar at this time at that site?

"A Yes, sir."

According to plaintiff, she waited five or ten minutes before boarding the bus on which the accident occurred, and during that time there was a light rain.

On cross-examination, plaintiff testified:

"Q When you got on, did you, there is one, there was only one step on the bus, wasn't there, and then you went up onto the floor of the bus?

"A As I recall, yes.

"Q When you got on the bus, did you go up to the floor on the same level that the operator is seated on?

"A Yes.

"Q Did you notice this step as you went up?

"A No. It was, I was interested in catching the driver before the light changed and—

"Q Now the lighting conditions were all right there, weren't they?

"A Yes.

"Q Your eyesight was all right?

"A That's right.

"Q And as you mounted the steps, the step was right in front of your eyes, was it not?

"A Well, it was, if I had looked down. I was looking up at the driver.

"Q I'll ask you at the time you got onto the bus, did you see any debris or mud on that step?

"A I didn't look at the step as I got on it.

"Q I say, you did not see any then when you got on?

"A I didn't look at the step. Had I looked down I would have seen it.

"Q You don't have to wear glasses?

"A For distance, I wear glasses.

"Q But you didn't have to wear them for this purpose?

"A No.

"Q And then you got up on the level of the floor of the bus and the driver told you that he was not going to the place you wanted to go to, he

was going to the garage. And then you backed off of the bus, did you not?

"A Yes, sir.

"Q And did you have hold of anything when you backed off?

"A I had ahold of the handrail on the right hand side and the edge of the door, as I recall, with my left hand.

"Q Were you carrying anything?

"A My purse.

"Q Was your purse hung over your arm?

"A Yes.

"Q So at the time you descended from this bus you were descending backwards?

"A That's right.

"Q Then you slipped on the step, did you?

"A Yes.

"Q You say you slipped on this debris and mud on the step?

"A Yes.

"Q And that's what caused your fall?

"A Yes.

"Q Was there water on the step?

"A I don't recall that water was standing on the step.

"Q Well, were there any leaves on the step?

"A There was mud and leaves, yes.

"Q What kind of leaves were they?

"A Oh, I don't know what kind they were. They were just—

"Q Was the whole step covered with mud?

"A When my foot touched the ground or touched the pavement, when I slipped I reached down to see what damage had been done, looked down to see what damage had been done to my leg. I saw the mud and leaves and accumulation, debris, wet debris, on the step.

"Q Did it cover the whole step?

"A I think it did.

"Q It was the slipping on that debris that caused your fall, wasn't it?

"A Yes."

She testified that the "debris" was "mud, just like anything that's carried on people's feet" and that with respect to the edge of the step "a fleeting glance looked like—this is my observation now—like rough metal stripping or the top of rough metal on the front edge of the bus step" and that this was the edge against which she had rubbed her shin.

A physician called to attend plaintiff early in January, 1959, gave the following opinion as to the probable cause of her condition:

"A Well, in my opinion the cause of this condition which I observed was some type of trauma or injury to the tissues of the front of her shin, including a bruising or abrading type of damage to the soft tissues, the skin, the underlying fascia and the front of the tibia, bruising along with the rest of the tissues, the periosteum. And with the periosteal reaction, which is the reaction to such injury to the lining of a bone."

Emanuel Kingsfather, called by the plaintiff as an adverse witness, was a bus operator for the defendant and had worked in that capacity for the defendant and its predecessor, the Portland Traction Company, for seventeen and one-half years. He testified in part as follows:

"Q (By Mr. Peterson) Who inspects the steps to determine whether or not they should be cleaned or washed?

"A Well, we inspect the steps when we get to the end of the line. When we are driving, when we

take them to the barn, all the buses are swept out, and they have a regular man to take care of that.

"Q. If the bus has—

"A. They are all swept out when they go in, swept, and then they are washed every so often, whenever they need it. I mean, if there is any mud or anything else on there, why it's washed right off, if there is. But I haven't even seen any lately. I might have seen some ice form on a step, but I have never seen any mud on it."

This was the only testimony on inspection.

The witness Kingsfather further testified that on February 5, 1958, between seven and eight thirty in the morning, the schedule for the Irvington run from Ninth and Dekum Streets, where it started, to Fifth and Alder, was thirty minutes. This was the "peak period" and there would be a great many passengers getting on and off enroute.

The foregoing substantially states all the material evidence in the record.

We think that this case is ruled by *Morrison v. Pacific Nw. Pub. Ser. Co.* (1934) 146 Or 225, 30 P2d 344. There a passenger on a streetcar sustained an injury while alighting from the car as the result of stepping on a plum on the floor of the front vestibule of the car. This court, in an opinion by Mr. Justice BAILEY which thoroughly reviewed the authorities, reversed a judgment for the plaintiff. We held there was no liability because the evidence failed to disclose knowledge on the part of the defendant's employee, the motorman, of the presence of the plum or that it had been there for a sufficient length of time to warrant an inference that he had or should have had such knowledge. Additional cases are collected in the Annotations 34 ALR2d 360 and 9 ALR 2d 938.

118

Without undertaking again to review the decisions, it may be said that in general they fully support the principle on which the Morrison case was decided. Indeed, that principle is not questioned by counsel for the plaintiff. The only inquiry that need be made therefore is whether, in the absence of proof that the bus operator had actual knowledge of the presence of the foreign substance—and there is no such proof—the evidence justifies an inference that it had been there such a length of time as to impute such knowledge to him. There is no such evidence in the record. We have no description of the material and no evidence of the quantity of it except plaintiff's statement that she "thought" it covered the whole step. In our opinion, this is insufficient. *Byrne v. Connecticut Co.*, 123 Conn 304, 195 A 184; *Yedinak v. City of New York*, 91 NYS 2d 195 affirmed without opinion 90 NYS2d 678.

Plaintiff cites two cases in which the foreign substance was ice and snow. In *Hartford v. Boston Elevated Ry. Co.*, 280 Mass 288, 182 NE 476, the plaintiff slipped on a formation of ice in a car of the defendant while walking up the aisle to a seat. The accident occurred on a cold dry winter day when there was snow on the ground and in places, ice. The plaintiff testified that she slipped on a formation of ice about six or seven inches square in the center of the aisle. The formation of ice was variously described by witnesses as "frozen very hard," "packed down into the corrugations" built into the floor, "embedded in the corrugations," "frozen right in the crevices," and so forth. The court held that, while there was no direct evidence as to when the ice formation came into existence, "from its character and the firmness of its attachment to the floor as described by witnesses, an inference by the jury was not unwarranted that it had

been there a considerable time and long enough for the defendant's employees in the exercise of the degree of care required of the defendant as a common carrier of passengers to have discovered and removed it."

The other case cited by the plaintiff as in point on the question of knowledge of the defendant's employees is *Gegere v. Chicago & N. W. Ry. Co.,* 175 Minn 96, 220 NW 429. In this case the plaintiff slipped on the steps of one of the defendant's railroad cars. The accident occurred on a cold day and there were snow flurries during the day. Plaintiff testified that as he was leaving the train and was about to descend the steps, he fell because of ice and snow which had been allowed to accumulate on the steps. The court held there was a question for the jury. The court recognized the principle that the mere presence of ice and snow on the platform or steps of passenger coaches without proof as to the length of time it had remainded or that those in charge of the train had knowledge of its existence and opportunity to remove the same, would not support a recovery. In this case, however, while there was no description of the accumulation of ice and snow, the plaintiff testified that the brakeman said: "The snow and ice should have been removed from the steps." The Massachusetts case is distinguishable because of the evidence of the condition of the icy formation in the car which would enable the jury to find that it was not of recent origin, and the Minnesota case is not persuasive here because of the testimony concerning the brakeman's knowledge of the dangerous condition.

When a bus or a train is operated during a snowfall there may exist a warning to employees of the carrier to be on their guard against snow which may be blown upon the steps and platforms or tracked by

passengers onto the vehicle; but there is nothing in this case which would suggest notice to the operator of the bus of the likelihood of mud accumulating on the step, and he could scarcely be expected to anticipate the presence of leaves in the month of February. The mud and leaves could not have been very conspicuous because plaintiff did not notice them when she got on the bus.

■ Evidence furnished by the plaintiff is to the effect that the steps of defendant's buses were inspected regularly when they came to the end of the line and there is no evidence that the steps of the bus on which plaintiff claims to have been injured were not so inspected before it started on the trip in question here. The trip was made during the period of heavy travel in the morning with frequent stops for passengers getting on and off and consequent numerous duties on the part of the operator. With respect to a contention similar to that of the plaintiff in this case, the Supreme Court of Connecticut said in *Byrne v. Connecticut Co.,* supra: "Translated into terms of duty, this would mean that the driver was under an obligation at every stop the bus made to examine the step. Under the existing conditions this was too high a measure of care to impose upon the defendant." With the foregoing we agree.

■ Plaintiff further argues that even though she has failed to prove that defendant's negligence caused her to fall, yet it was negligent in equipping its bus with a step having a rough metal edge and that it was this negligence which caused her injury. Plaintiff testified to a "fleeting glimpse" which she caught before the bus door was shut that "the edge of the step was rough."

Her counsel argue: "The evidence with respect to

this issue was that the metal edge of the step was rough *and sharp* enough to produce in plaintiff's leg a jagged cut, which was sufficiently severe to cause an injury to the bone." (Italics added.) Counsel also speak of "a jagged edge on the step." It was, they say "the major and for all practical purposes the sole cause of the injury she actually suffered." Elsewhere in the brief counsel say "even if she were negligent in slipping and falling, in the ordinary course of events this fall would have produced no injury, had not the defendant been found negligent in a wholly unrelated respect." And again it is said "it should be noted in closing this argument, that the only damages claimed by plaintiff are with respect to the cut on her leg caused by the rough edge of the step. Any other bumps or bruises she may have suffered in her fall are not even asserted in her complaint."

This was the second action brought by the plaintiff against the defendant to recover for injuries sustained in the alleged accident. The complaint in the first action which was filed May 7, 1958, nearly a year prior to the commencement of the present action, is in evidence. It contained substantially the same specifications of negligence as the complaint in the present action with the exception that there was no charge that the step of the bus had a rough metal edge.

The allegations of injury in the two complaints are identical.

It is thus seen that injuries which counsel say now are to be attributed solely to "the rough edge of the step" are the identical injuries which in her former complaint plaintiff avers she sustained solely as the result of a fall caused by a slippery step. She then made no charge that there was anything wrong with the step other than its slippery condition.

We call attention to this discrepancy for the reason, among others, that it serves to point up the fallacy in the argument which lies in the assumption that there is evidence from which the jury could have found that *but for* the kind of step which the plaintiff described in her testimony she would not have sustained the injuries on account of which she sues. She did not testify that the edge of the step was sharp or that it was jagged. She did describe her wound as "an abrasion or a cut" and a "jagged cut" and she said that "It felt like a jagged cut." The injuries alleged in both complaints were "a deep abrasion to her left leg and contusion to the bone and soft tissue" of her leg, and injuries to the nerves of her leg. The only medical testimony in the case attributed the plaintiff's condition, as it was nearly a year after the accident, to "some type of trauma or injury to the tissues of the front of her shin, including a bruising or abrading type of damage to the soft tissues" and so forth. There is no evidence, medical or otherwise, that had the edge of the step not been as described by her she would not have received an injury to her leg as the result of her fall, or that her injury would have been different or less severe. The record does not sustain plaintiff's effort thus to compartmentalize her injuries.

Beyond this, we are of the opinion that the meager testimony of the plaintiff in regard to the appearance of the edge of the step was insufficient to establish negligence of the defendant in that regard.

The judgment is affirmed.