Argued and submitted March 14, 2014, affirmed August 19, 2015, petition for review denied February 4, 2016 (358 Or 550)

Tina MOOREHEAD,
*Plaintiff-Appellant,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
a municipal corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
110404566; A151775

359 P3d 314

Willard E. Merkel argued the cause for appellant. With him on the briefs was Merkel & Associates.

Keith M. Garza argued the cause for respondent. With him on the brief was Kimberly Sewell.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Plaintiff appeals a judgment in a negligence action against defendant, Tri-County Metropolitan Transportation District of Oregon (TriMet), for personal injuries arising from her slip and fall on a MAX train one rainy evening in Portland. In her complaint, plaintiff alleged that TriMet had been negligent in allowing water tracked in by passengers to gather and remain on the floor of its train without warning passengers or blocking off the areas with water on the floor. At trial, TriMet defended by arguing that, by installing special flooring on the train, TriMet had made the train reasonably safe, and, therefore, it had no duty to act. Alternatively, TriMet contended that plaintiff also was at fault by failing to exercise reasonable care to avoid harm. The jury found that TriMet had not been negligent as alleged by plaintiff and, therefore, did not reach the issue of comparative negligence. On appeal, plaintiff argues that the trial court erred in instructing the jury regarding TriMet's standard of care.[1] As explained below, given the parties' competing theories at trial, the trial court did not err in instructing the jury. Accordingly, we affirm.

## FACTS

On a rainy evening in November 2010, plaintiff boarded a TriMet MAX train in Portland to travel home from work. It had been raining all day and the floor of the train was wet from tracked-in rainwater. There was an event at the Rose Garden arena that evening, so the train was crowded. When plaintiff boarded the train, she noticed that the floor of the train was wet from rainwater, though she and others testified at trial that there were no puddles of standing water on the floor. When the train reached her stop, plaintiff got up from her seat and made her way to the exit. While the train was stopped, as she approached the open doors to disembark the train, she slipped and fell, sustaining substantial injuries to her ankle.

TriMet used a material called Tungsten™ on the floor of the MAX train that plaintiff was on at the time of

---

[1] Plaintiff argues that that error was repeated in the comparative negligence instruction and the verdict form. Given our resolution of this appeal, we need not address those arguments.

her fall. TriMet presented evidence that Tungsten™ is a highly slip-resistant material that TriMet had selected, in part, for its safety and slip resistance, even when wet. The train also had handrails for passengers to use. Lindner, who was operating the train in which plaintiff fell, testified that he knew that the floor of the train was wet from rainwater and that he had not warned the passengers or attempted to remove the water from the train floor that evening.

Following her accident, plaintiff filed this action for damages against TriMet. At the time of trial, plaintiff had narrowed her specifications of negligence to four, alleging that TriMet had been negligent in:

"(a) Allowing water to gather on its train floor when Defendant knew, or should have known, that the public, including Plaintiff, would be walking in the area;

"(b) Permitting water to remain on its train floor when Defendant knew, or should have known, that the public, including Plaintiff, would be walking in the area;

"(c) Failing to warn the public, including Plaintiff, of the slippery condition of its train floor created by the water it allowed to gather there; and

"(d) Failing to block off, rope off or barricade the area of the train floor on which water had gathered when Defendant knew, or should have known, that the public, including Plaintiff, would walk in the area."

Thus, plaintiff's negligence theory was that TriMet was required but failed to keep foreign substances off the floors of its trains, to warn passengers that the train floor was slippery, and to block off, rope off, or barricade areas of the train floor that were wet.

TriMet denied that it had been negligent in the ways alleged by plaintiff. TriMet's theory of defense was that it had made its trains reasonably safe, which was all that the law required. Specifically, it contended that the rainwater on the floor of the train did not create an unreasonable risk of harm triggering a duty on its part to warn or eliminate that risk. TriMet also asserted an affirmative defense of comparative fault at trial, arguing that some or all of plaintiff's injuries were caused in whole or in part by her own negligent conduct.

Although the parties agreed that a premises liability instruction would be appropriate, the parties disagreed over how the jury should be instructed concerning TriMet's standard of care. The parties submitted competing proposed instructions before trial. Plaintiff contended that, because she was pursuing a negligence claim against TriMet based only on a theory that it was responsible for keeping foreign substances off the floors of its trains, the court should give the jury her proposed instruction, which was a modified form of Uniform Civil Jury Instruction (UCJI) 46.12,[2] pertaining to foreign substances on the floor of businesses. Plaintiff's proposed instruction provided:

"Tri-Met is a common carrier, and as such owes certain duties to its passengers. A common carrier has a duty to provide its passengers with the highest degree of care for their safety. This duty includes protecting passengers from injuries caused by foreign substances on the floor of its train. Oregon law provides that tracked-in rainwater is a foreign substance. Oregon law provides that a common carrier operating a train is liable for passenger injury caused by a foreign substance on the floor of its train if the operator knows that the substance is on the floor and fails to use reasonable diligence to remove it, or that the foreign substance had been there so long that the train operator, in the exercise of reasonable diligence, should have discovered and removed it. *Rex v. Albertson's, Inc.*, 102 Or App 178, 181, 792 P2d 1248 (1990); *Pribble v. Safeway Stores*, 249 Or 184, 187, 437 P2d 745 (1968). You are instructed that the scope of Defendant's responsibility for tracked-in rainwater on its train floor does <u>not</u> depend on whether Plaintiff knew the train floor was wet from tracked-in rainwater or reasonably

---

[2] UCJI 46.12 provides:

**"INVITEE—FOREIGN SUBSTANCE—
BUSINESS PROPERTY**

"The plaintiff claims [he/she] was injured by slipping on a foreign substance on the floor of the defendant. To recover, the plaintiff must prove one of the following:

"(1) The substance was placed there by the defendant; or

"(2) The defendant knew that the substance was there and failed to use reasonable care to remove it; or

"(3) The substance had been there so long that the defendant should, in the exercise of reasonable care, have discovered and removed it."

should have known of that fact. *Nylander v. State of Oregon*, 292 Or 252, 260-[61], 637 P2d 1286 (1981)."

(Underscoring in original.)

In keeping with its defense theory, TriMet submitted the following two proposed instructions:

### "POSSESSOR'S DUTY TO INVITEE (modified)

"A possessor of premises is not an insurer or guarantor of the safety of an invitee upon the premises; rather, the possessor's duty is one of reasonable care under the circumstances, which I will now define for you.

"A possessor of premises has a duty to make the premises reasonably safe for an invitee's visit. The possessor must exercise reasonable care to discover any condition that is unreasonably dangerous to the invitee and either eliminate the condition or warn any foreseeable invitee of the risk so the invitee can avoid the harm.

"A condition is unreasonably dangerous when the condition cannot be encountered with reasonable safety, even if the danger is known and appreciated. A condition is not unreasonably dangerous when the hazard arising from it would be known and appreciated by reasonable persons expected to encounter the condition.

### "INVITEE-FOREIGN SUBSTANCE-BUSINESS PROPERTY (modified)

"The plaintiff claims she was injured by slipping on a foreign substance on the defendant's floor. To recover, the plaintiff must prove that the foreign substance caused the floor to be unreasonably dangerous and the defendant knew, or should have known, the substance was there and failed to use reasonable care to remove it or eliminate the unreasonable danger that the substance presented."

The first instruction was based on UCJI 46.09,[3] pertaining to the duty a possessor of premises has to its invitees;

---

[3] UCJI 46.09 provides:

### "POSSESSOR'S DUTY TO INVITEE

"A possessor of premises has a duty to make the premises reasonably safe for an invitee's visit. The possessor must exercise reasonable care to discover any condition that creates an unreasonable risk of harm to the invitee and either eliminate the condition or warn any foreseeable invitee of the risk so the invitee can avoid the harm.

the second was based on UCJI 46.12. Through its second instruction, TriMet would have placed a burden on plaintiff to prove that "the foreign substance caused the floor to be unreasonably dangerous," which TriMet's first instruction defined as a condition that "cannot be encountered with reasonable safety, even if the danger is known and appreciated."

Before the trial was first scheduled to begin, the trial court addressed, among other things, the parties' dispute concerning TriMet's standard of care in the jury instructions. Plaintiff objected to TriMet's proposed instructions. She contended that TriMet's instruction concerning duties to invitees based on UCJI 46.09 was inapplicable and should not be given at all, because she was only alleging that TriMet was negligent with regard to foreign substances on the floor of its train—a theory that she argued was exclusively covered by UCJI 46.12:

> "Your Honor, I should make clear what plaintiff's complaint is. We are alleging only that TriMet was responsible for keeping foreign substances off its train floor.
>
> "If you look at premises liability law you will find that a premises possessor has five different duties that it owes to a claimant or an invitee. [The first is] to maintain a reasonably safe premises. We're not claiming that one is applicable.
>
> "The second is to protect from defective conditions. We're not claiming that's applicable. The third is to protect from unreasonably dangerous conditions. We're not claiming that's applicable. The fourth is to protect from injuries caused by foreign substances on the floor. That's the one we're claiming. And the fifth is to protect from acts of third parties. We're not claiming that either.
>
> "So in Paragraph 6 of our complaint where we set forth the allegations of negligence[,] all of those have to do with

"[If the condition could not be encountered with reasonable safety even if the danger was known and appreciated by the invitee, the possessor is obligated to do more than warn; the possessor must take reasonable and feasible steps to eliminate the danger.]"

(Brackets in original.) The comment to UCJI 46.09 states that "[t]he bracketed paragraph must be given when there is evidence to support a finding that the condition cannot be encountered with reasonable safety even if the danger was known and appreciated by the invitee," citing *Vandeveere-Pratt v. Portland Habilitation Center*, 242 Or App 554, 561, 259 P3d 9 (2011).

foreign substances on the floor. We think that the most appropriate instruction to give is the one that's found at Uniform Civil Jury Instruction 46.12."

Plaintiff further argued that TriMet's instruction based on UCJI 46.12 was in part an incorrect statement of the law. In plaintiff's view, it erroneously required her to prove that the water caused the floor to be unreasonably dangerous:

"I think the problem with the modification that [TriMet] has made is [that it has] inserted an unreasonably high hurdle into the instruction.

"[TriMet's draft instruction] says, 'To recover the plaintiff must prove the foreign substance—that the foreign substance caused the floor to be unreasonably dangerous.'

"That's not the law and that isn't the uniform instruction. Unreasonably dangerous[,] you'll recall[,] is one of the five tests that plaintiff is not relying upon here in this case. It is true that a premises owner must protect from unreasonably dangerous conditions, but, again, we're not relying on that test.

"We're instead relying on the foreign substance on the floor test. Under the uniform instruction * * * the surface of the floor doesn't have to be unreasonably dangerous."

Plaintiff contended that instructions based on UCJI 46.09 and UCJI 46.12 should not be given together because a foreign substance is, by definition, unreasonably dangerous, and therefore, the jury did not get to decide that element. Plaintiff urged the court to give a stand-alone instruction based on UCJI 46.12.

TriMet disputed plaintiff's view of the law and argued that a foreign substance on the floor can create an unreasonably dangerous condition, but that it is not, as a matter of law, an unreasonably dangerous condition. Instead, TriMet contended, a plaintiff has to establish in any given case that the foreign substance on the floor created an unreasonably dangerous condition in order for the premises owner to have a duty to act. Thus, the jury should decide whether water on the train floor created an unreasonably dangerous condition.

The trial court heard extensive argument on the issue and, with the parties' concurrence, postponed the trial to settle the issue of the jury instructions. After the court provided the parties with draft jury instructions, the court considered further arguments before the rescheduled trial began. Among other things, TriMet contended that it had a right to an instruction on its theory of the case, namely, that the water on the floor of the train was not an unreasonably dangerous condition as to which it had a duty to act, yet plaintiff's proposed instruction would remove that consideration from the jury.

Ultimately, the trial court gave the jury an instruction that blended aspects of UCJI 46.09 and UCJI 46.12. That instruction provided:

"In this case, Plaintiff * * * alleges she was injured when she slipped and fell on the floor of the MAX train, which was covered with rain water tracked in by passengers boarding and exiting the train. She claims TRI-MET was negligent because it did not fulfill the legal duty it owed to its passengers, which in turn caused her to slip and fall and fracture her ankle.

"The law does not require TRI-MET or other property owners to guaranty the safety of persons who are invited to use their property; however, all property owners owe certain legal duties to their invitees and if they do not fulfill those duties, they are negligent.

"*TRI-MET's legal duty is to make its trains reasonably safe for a passenger's visit. TRI-MET must exercise reasonable care to discover any condition on its train that creates an unreasonable risk of harm to passengers and either eliminate the condition or warn its passengers of the risk so the passengers can avoid the harm.*

"*If the condition could not be encountered with reasonable safety even if the danger was known and appreciated by TRI-MET's passengers, TRI-MET is required to do more than warn passengers of the condition—it must take reasonable and feasible steps to eliminate the danger.*

"*To prevail on her negligence claim, [plaintiff] must prove:*

*"(1)  TRI-MET knew water was present on its MAX train floor;*

*"(2)  TRI-MET did not use reasonable care to eliminate any unreasonable risk of harm associated with the conditions presented or to warn passengers of the risk so they could avoid the harm; and*

*"(3)  TRI-MET's negligence caused [plaintiff] to sustain injury and related damages.*

"Alternatively, if you conclude the condition of water on the train floor could not be encountered with reasonable safety, even if the risk of harm associated with that condition was known to and appreciated by TRI-MET passengers, then [plaintiff] must prove the following to prevail:

"(1)  TRI-MET knew that the water was present on its MAX train floor;

"(2)  TRI-MET did not take reasonable and feasible steps to eliminate the danger; and

"(3)  TRI-MET's negligence caused [plaintiff] to sustain injury and related damages."

(Emphasis added.) The trial court indicated that it had blended the two instructions to accommodate both parties' theories of the case. Instead of using "unreasonably dangerous condition," however, the court referred to a condition "that creates an unreasonable risk of harm to passengers."

Plaintiff objected to the instruction given, again arguing that she did not have "any obligation to show danger or unreasonable risk or unreasonable propensity." She argued that her theory of the case—"foreign substance on the floor"—should control the instruction to be given; that her authorities established that a foreign substance on the floor is itself a hazard; and that she did not have to prove that there was some sort of hazardous condition created as a result.

The jury returned a defense verdict, finding that TriMet was not negligent in any of the ways alleged by plaintiff. As a result, it did not reach the issue of comparative negligence.

## DISCUSSION

In her single assignment of error, plaintiff argues that the trial court erred in instructing the jury about TriMet's standard of care. As in the trial court, plaintiff contends that, under Oregon law, a foreign substance on the floor is, as a matter of law, unreasonably dangerous, and therefore, the jury should not have been instructed that TriMet's liability was dependent upon its finding that the water created an unreasonable risk of harm.[4] In other words, plaintiff contends, in any case involving a slip and fall on a foreign substance, the plaintiff never has to prove that the foreign substance created an unreasonable risk of harm, and she was entitled to an instruction to that effect because it was her theory of the case. For the reasons below, we disagree.

As noted above, the parties tried this case as one involving potential premises liability between a premises owner and an invitee. On appeal, as she did below, plaintiff frames the issue as what standard of care a *common carrier* owes its passengers. TriMet, under our case law, is a common carrier. *Brant v. Tri-Met*, 230 Or App 97, 103, 213 P3d 869 (2009). Under ordinary principles, a common carrier "owes its passengers the highest degree of care and skill practicable for it to exercise." *Id.* (internal quotation marks omitted). Plaintiff sought to have that standard of care presented to the jury through her proposed instruction; however, on appeal, she concedes that "Oregon's Supreme Court has described a common carrier's liability for foreign substances on the floor as equivalent to the duty owed by a premises owner to remove 'foreign substances' from floors open to the public." *See Morrison v. Pacific Nw. Pub. Ser. Co.*, 146 Or 225, 30 P2d 344 (1934) (considering whether, in a case involving a slip and fall on a plum on the floor of a train, the transportation company is "charged with the highest degree of care for the safety of its passengers, or only with ordinary care," and concluding that ordinary care standard applies); *see also Baker v. Rose City Transit Co.*,

---

[4] In part, TriMet argues that plaintiff's preservation of the claimed error is "in doubt" because there are gaps in the record regarding her proposed instructions and because her post-instruction "exceptions" are "questionable" under preservation principles. We reject those arguments.

227 Or 110, 117, 361 P2d 257 (1961) (applying *Morrison* to a slip and fall on a foreign substance on a bus step). Thus, plaintiff does not argue that the trial court erred when it gave an instruction without her requested statement that a common carrier "has a duty to provide its passengers with the highest degree of care for their safety." Accordingly, we analyze the trial court's instruction using principles of premises liability.

"As a general rule, parties in a civil action are entitled to jury instructions on their theory of the case if their requested instructions correctly state the law, are based on the current pleadings in the case, and are supported by evidence." *Vandeveere-Pratt v. Portland Habilitation Center*, 242 Or App 554, 557-58, 259 P3d 9 (2011) (internal quotation marks omitted). In reviewing an allegation that a trial court erred in giving a particular jury instruction, we review the given instruction to determine whether it probably created an erroneous impression of the law in the minds of the jurors that affected the outcome of the case. *Honstein v. Metro West Ambulance Service*, 193 Or App 457, 461, 90 P3d 1030, *rev den*, 337 Or 327 (2004).

On appeal, plaintiff focuses her attention on the three paragraphs of the trial court's instruction emphasized in italics above. *See* 273 Or App at 61-62. As to the first paragraph that she contends was erroneous, the trial court instructed the jury that

"TRI-MET's legal duty is to make its trains reasonably safe for a passenger's visit. TRI-MET must exercise reasonable care to discover any condition on its train that creates an unreasonable risk of harm to passengers and either eliminate the condition or warn its passengers of the risk so the passengers can avoid the harm."

The legal support for that part of the instruction is well-established. Under Oregon law, a premises owner owes a duty to invitees to make its premises reasonably safe. *Woolston v. Wells*, 297 Or 548, 557, 687 P2d 144 (1984). That duty extends to keeping the floors reasonably safe to walk upon. *Lopp v. First Natioinal Bank*, 151 Or 634, 638-39, 51 P2d 261 (1935). "That duty requires [occupiers] to exercise

due care to discover conditions on the premises that create an unreasonable risk of harm to invitees or warn them of the risk so as to enable them to avoid the harm." *Hagler v. Coastal Farm Holdings, Inc.*, 354 Or 132, 141, 309 P3d 1073 (2013).

In the second paragraph that plaintiff challenges, the trial court instructed:

> "If the condition could not be encountered with reasonable safety even if the danger was known and appreciated by TRI-MET's passengers, TRI-MET is required to do more than warn passengers of the condition—it must take reasonable and feasible steps to eliminate the danger."

That part of the instruction is also supported by case law. It is well-established in Oregon that, if a condition on the business premises is

> "unreasonably dangerous—a condition which cannot be encountered with reasonable safety even if the danger is known and appreciated—the owner of the premises is obligated to do more than post warning signs; [the owner] must take reasonable and feasible steps to obviate the danger."

*Wilk v. Georges*, 267 Or 19, 26, 514 P2d 877 (1973) (footnote omitted). Finally, in the third paragraph of the court's instruction that plaintiff challenges, the trial court instructed the jury, consistently with both the first and second disputed paragraphs of the instruction, that plaintiff had to establish, among other things, that TriMet

> "did not use reasonable care to eliminate any unreasonable risk of harm associated with the conditions presented or warn passengers of the risk so they could avoid the harm."

Therefore, the portions of the trial court's instruction about which plaintiff complains are correct statements of the law. Plaintiff argues, however, that she had to prove only that TriMet "knew water was present on its MAX train floor," as the court instructed in part in the third disputed paragraph of the instruction, but TriMet failed to act, plus causation and damages, to establish TriMet's liability for negligence. In her view, the other parts of the instruction that she disputed were incorrectly given. That is so, she contends, for two reasons.

First, plaintiff contends that "condition" cases, like *Hagler* and *Wilk*, are a separate line of cases that do not apply when the plaintiff alleges negligence based on a foreign substance on the floor. Plaintiff bases that argument on her view that Oregon premises liability law recognizes five separate and distinct duties, which she states as follows:

"1.   To maintain reasonably safe premises, *Woolston v. Wells*, 297 Or 548, 557-[58], 687 P2d 144 (1984); *Hill v. Pacific Power & Light*, 273 Or 713, 715, 543 P2d 3 (1975);

"2.   To protect from defective conditions on the premises, *Katter v. Jack's Datsun Sales, Inc.*, 279 Or 161, 166-[67], 566 P2d 509 (1977);

"3.   To protect from unreasonably dangerous conditions, *Dawson v. Payless Drugs*, 248 Or 334, 340, 433 P2d 1019 (1967);

"4.   To protect from injuries caused by foreign substances on the floor of the premises, *Rex v. Albertson's, Inc.*, 102 Or App 178, 792 P2d 1248[, *rev den*, 310 Or 422] (1990); *Van Den Bron v. Fred Meyer, Inc.*, 86 Or App 329, 738 P2d 1011 (1987); *Pribble v. Safeway Stores*, 249 Or 184, 187, 437 P2d 745 (1968) (tracked in rainwater is a 'foreign substance' to which this test applies); and

"5.   To protect from acts of third persons, *Restatement (Second) of Torts*, § 344 (1965); *Welchel v. Strangways*, 275 Or 297, 304, 550 P2d 1228 (1976)."

She argues that the only "duty" that applies in this case is number four. Thus, any cases involving the other duties, in her view, are inapplicable here. We reject that argument.

As mentioned above, the overarching duty that a premises owner owes to its invitees is the duty to maintain its premises in a reasonably safe condition. The owner's duties to protect from dangerous conditions, including slippery substances on the floor, emanate from that duty. For instance, in *Pribble*, 249 Or at 187, one of plaintiff's so-called "foreign substance" cases, the Oregon Supreme Court, in assessing the question of what duty the owner owed to the invitee, said: "*Klein v. Montgomery Ward & Co.*, 235 Or 315, 323, 384 P2d 978 (1963), states it more succinctly as follows: '* * * it was the duty of the defendant to have its premises in a reasonably safe condition for the reception of its

customers.'" (Ellipses in *Pribble.*) *See also Lopp*, 151 Or at 638-39 (in foreign substance case, stating duty of premises owner as a duty "to maintain such building in a reasonable condition of safety," and that that "duty extends to keeping the floor ordinarily safe to walk upon").

Even more recently, in *Hagler*, the Oregon Supreme Court indicated that the legal principles governing cases that plaintiff designates as "foreign substance" cases also apply in those she views as "condition" cases. 354 Or at 141 (in a case involving a tool falling from a store display and injuring a customer, the court stated that it has applied general principles of premises liability law, such as the premises owner's duty to warn or eliminate conditions creating an unreasonable risk of harm, in "a number of cases involving injuries resulting from items or substances that fell to the floor of business premises"). In fact, in *Hagler*, the court discussed *Lee v. Meier & Frank Co.*, 166 Or 600, 604, 114 P2d 136 (1941) (involving a slip and fall on a pillow in a store aisle)—which the court has consistently treated as a case involving a foreign substance, *see Starberg v. Olbekson*, 169 Or 369, 376, 129 P2d 62 (1942) (so indicating)—even though *Hagler* involved a tool that had fallen from a shelf of the store onto the plaintiff. The court explained that "*Lee* * * * represents an application of the general rule that a landowner must exercise due care to discover conditions on the premises that create an unreasonable risk of harm to invitees and to warn invitees of those risks." *Hagler*, 354 Or at 144. We conclude that the distinction plaintiff seeks to draw between "condition" cases and "foreign substance" cases is nonexistent.

Second, plaintiff contends that a foreign substance on a floor is, by definition, unreasonably dangerous, and so TriMet's duty to act was not dependent upon a finding by the jury that the water on the floor of the train created an unreasonable risk of harm to passengers. Thus, under her view of the law, TriMet's knowledge and failure to act is sufficient because all that the jury must decide, and all that a plaintiff must prove is that

"(a) the substance was placed [on the floor] by the occupant,
(b) the occupant knew the substance was there and failed

to use reasonable diligence to remove it, or (c) the foreign substance had been there for such a length of time that the occupant should, by the exercise of reasonable diligence, have discovered and removed it."

Plaintiff cites cases such as *Griffin v. K.E. McKay's Market of Coos Bay, Inc.*, 125 Or App 448, 451, 865 P2d 1320 (1993), *rev den*, 319 Or 80 (1994); *Rex*, 102 Or App 178; *Van Den Bron*, 86 Or App 329; *Diller v. Safeway Stores, Inc.*, 274 Or 735, 548 P2d 1304 (1976); and *Pribble*, 249 Or 184, to support her position. She contends that "*none* of these Oregon 'foreign substance' cases require [a plaintiff to] prove a foreign substance on the floor creates an unreasonably dangerous condition[.]" (Emphasis in original.) At oral argument, however, plaintiff acknowledged that she was required to prove that the foreign substance made the floor slippery, but nonetheless maintained that she was not required to prove that it made the floor dangerous. We disagree with plaintiff's view of the law.

We begin by returning to the general principles of premises liability. The overarching principle in the case law is that the owner owes a duty to invitees to keep its premises—including its floors—in a reasonably safe condition. Thus, in the context of the condition of its premises, the owner is obligated to take reasonable action to protect the invitee against unreasonable risks of harm. "The role of the [occupier] *** is not that of an insurer against accidents upon the premises even as to persons whom they have invited to enter. And the mere fact that an invitee was injured on the premises does not, by itself, give rise to an inference of negligence." *Hagler*, 354 Or at 141 (internal quotation marks and citation omitted).

The cases that plaintiff cites establish that, in premises liability cases in which the invitee claims to have been injured by slipping on a foreign substance on the floor of a business, liability will not attach unless the owner had actual or constructive knowledge of the foreign substance and failed to use reasonable care to remove it. Water, including tracked-in rainwater, is a foreign substance. *Pribble*, 249 Or at 187.

An invitee can establish the owner's knowledge of the substance in one of three ways:

"(a)   That the substance was placed there by the occupant, or

"(b)   That the occupant knew that the substance was there and failed to use reasonable diligence to remove it, or

"(c)   That the foreign substance had been there for such a length of time that the occupant should, by the exercise of reasonable diligence, have discovered and removed it."

*Cowden v. Earley et al*, 214 Or 384, 387, 327 P2d 1109 (1958) (citing, *inter alia, Lee,* 166 Or at 604; *Lopp,* 151 Or at 638; *Morrison,* 146 Or at 245; *De Mars v. Heathman,* 132 Or 609, 616, 286 P 144 (1930)); *see also Rex,* 102 Or App at 181 (same); *Van Den Bron,* 86 Or App at 331 (same); *Pribble,* 249 Or at 187 (same).

In *De Mars,* the Oregon Supreme Court explained that whether the owner had knowledge of the foreign substance is "significant" because "'[t]he foundation of liability *** is knowledge—or what is deemed in law to be the same thing; opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury.'" 132 Or at 617-18 (quoting 20 Ruling Case Law, 13, § 9). The requirement that an invitee establish that the owner had actual or constructive knowledge of the substance is consistent with general principles of premises liability law, which provide that an owner's duty to an invitee extends only to "dangers of which he knows or in the exercise of reasonable care should have known." *Hagler,* 354 Or at 141 (internal quotation marks omitted); *see also Lee,* 166 Or at 605 (In the context of a foreign substance case, the court stated that "'[a] possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he *** knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them[.]'" (Quoting the *Restatement First of Torts* § 343 (1934).)).

The three-part test for the owner's knowledge on which plaintiff relies was developed through a series of

cases in which the issue on appeal was whether the plaintiff had presented sufficient evidence of the defendant's knowledge of the foreign substance—which, as explained above, is a requirement for recovery in a foreign substance case. In those cases, which arose in the context of motions for summary judgment, directed verdicts, or involuntary nonsuits, the parties were not arguing about whether the foreign substance created an unreasonable risk of harm. *See, e.g.*, *Griffin*, 125 Or App 448 (trial court granted the defendant's motion for directed verdict on the ground that there was no evidence of negligence; affirmed on appeal because there was no evidence that the defendant either placed the substance on the floor or knew or should have known that it was on the floor); *Rex*, 102 Or App 178 (affirming trial court's grant of the defendant's motion for summary judgment on basis that there was no issue of fact as to whether the defendant had actual or constructive knowledge of the presence of the foreign substance (a blueberry) on the floor); *Van Den Bron*, 86 Or App 329 (trial court granted the defendant store's motion for directed verdict; we reversed because there was sufficient evidence for a jury to infer that the defendant placed the water on the floor); *Diller*, 274 Or 735 (trial court properly granted the defendant's motion for judgment notwithstanding the verdict because of insufficient evidence of the defendant's knowledge of water on the floor); *Pribble*, 249 Or 184 (trial court erred in granting the defendant's motion for involuntary nonsuit because there was evidence that the defendant knew of the foreign substance and that the foreign substance made the floor slippery).

Thus, absent proof of the defendant's knowledge of the foreign substance on the floor, a plaintiff's case fails, and whether the foreign substance created an unreasonable risk of harm is a moot point. It is not surprising, then, that the courts in those cases do not address whether a plaintiff has to prove that as an element of her claim. Contrary to plaintiff's contention, those cases do not stand for the proposition that foreign substances on floors are unreasonably dangerous as a matter of law.

Furthermore, several Oregon Supreme Court cases indicate that foreign substances on floors are not, as a matter

of law, unreasonably dangerous. For example, in *Pribble*—one of the cases upon which plaintiff relies—the court recognized that "a jury could reasonably find that a storekeeper can make his floor safe although it is wetted by customers coming in from the rain," by using things like mats and rugs in entranceways. 249 Or at 189. The court's opinion in *Dodge v. Tradewell Stores*, 256 Or 514, 474 P2d 745 (1970), provides another example. In that case, the plaintiff slipped on a puddle of water on the floor of the defendant's grocery store. The defendant knew that water had leaked from a cooler onto the floor, but it had treated the floor regularly with skid resistant wax. The jury returned a verdict for the plaintiff, but the trial court granted the defendant's motion for judgment notwithstanding the verdict on the ground that "there was no evidence that the presence of water on the asbestos tile floor of the store made that area more slippery and hazardous." *Id.* at 515 (internal quotation marks omitted). On appeal, the Supreme Court reversed, holding that direct testimony that the floor was slippery and hazardous was unnecessary, because "the jury could infer that the water on the linoleum floor would create a slippery condition." *Id.* at 517. *Dodge* implies that the plaintiff bears the burden of proof and that whether the foreign substance on the floor created a hazardous, slippery condition for which the owner is responsible is a jury question.

In contrast to the cases upon which plaintiff relies, this case involves a dispute about whether the foreign substance—rainwater on the floor of the train—created an unreasonable risk of harm. TriMet's theory of the case was that it had taken protective measures, such as installing special slip-resistant flooring on the train, that ameliorated the risk of slipping, rendering the floor reasonably safe. Further, TriMet introduced evidence to support that theory. As noted above, premises owners are only required to keep their floors in a reasonably safe condition. If the trial court had adopted plaintiff's view of the law and had only given an instruction based on UCJI 46.12, the jury would not have been able to consider TriMet's theory of the case, which was supported by evidence and recognized under the law. The trial court did not err in giving the instruction that it did.

Plaintiff also contends that the court erred in refusing to give her proposed instruction, which was based solely on UCJI 46.12. That instruction, however, did not contain the requirement that the plaintiff prove that the foreign substance created an unreasonable risk of harm, or even, as the form instruction indicates, that the foreign substance made the floor slippery. Rather, it only stated that "a common carrier operating a train is liable for passenger injury caused by a foreign substance on the floor of its train if the operator knows that the substance is on the floor and fails to use reasonable diligence to remove it." But the parties disputed whether the foreign substance on the floor of the premises created an unreasonable risk of harm, and that was an issue for the jury to decide. Thus, plaintiff's proposed instruction was an incomplete statement of the law, and the court's failure to give it is not a basis for reversal in this case. *See Honstein*, 193 Or App at 462 ("An error in refusing to give a requested jury instruction requires reversal only if the requested instruction clearly, concisely, and accurately stated the applicable legal principles."); *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998) ("[T]here is no error if the requested instruction is not correct in all respects.").

Affirmed.